## LAWSON AND SWINNEY *vs.* THE STATE.

1. An indictment which charges that the defendants, a man and a woman, "did live together in fornication," is sufficient.
2. An indictment is good which purports to be found by "the grand jurors for the said State, sworn and charged to inquire for the said county," when the names of the State and proper county are stated in the margin.
3. In all cases, whether civil or criminal, involving a charge of illicit intercourse within a limited period, evidence of acts anterior to that period may be adduced in connection with, and in explanation of, acts of a similar character occurring within that period, although such former acts would be inadmissible as independent testimony, and, if treated as an offence, would be barred by the statute of limitations.
4. Acts of indecent familiarity within the limited period cannot be explained by proof of the subsequent illicit intercourse of the parties; but when such acts

of indecent familiarity have been explained by previous acts of illicit inter-
course, then proof of the subsequent illicit intercourse becomes corroborative
or cumulative evidence, and is admissible.

5. When a man and a woman are jointly indicted and tried for living together in
fornication, the confessions of the woman are admissible evidence against
herself.

6. But it is the duty of the court to caution the jury that such confessions can
operate only against the party making them, and that the other defendant
cannot be convicted, except upon evidence *aliunde* sufficient to establish his
guilt.

7. The admission of the woman that her co-defendant was the father of a bastard
child, of which she was delivered more than twelve months after the finding
of the indictment, is admissible evidence against her, its relevancy being shown
by connecting it with other acts occurring before and within the period covered
by the indictment.

8. When evidence *prima facie* irrelevant is admitted against the objection of the
opposite party, and the record affirmatively shows that its relevancy was
made to appear from its connection with evidence subsequently introduced,
the Appellate Court will not reverse.

9. The refusal of the male defendant to pay the physician for his professional
services rendered during the confinement of the woman, and his declaration
that the child was not his, are not admissible evidence for him, when uncon-
nected with any conversation or admission offered by the State against him.

10. The fact of illicit connection between a man and a woman is one wh'ch, from
its nature, can very rarely be directly proved, and must, in the great majority
of cases, be inferred from circumstances, the weight and conclusiveness of
which vary according to the situation and character of the parties, the habits
of society, and other incidental circumstances.

11. A statement made by another person, or a conversation carried on in the
presence and hearing of a party, to which he made no reply, cannot be receiv-
ed in evidence against him as an implied admission on his part of its truth,
unless it was of such a character as would naturally call for a response from
him, and he was in a situation in which he would probably have replied to it.

12. A conversation carried on in the presence of the woman, and in the room
where she was lying, a few minutes after she had been delivered of a child,
between her mother and the attending physician, as to the person to whom
the latter should look for payment of his professional services, in which con-
versation she took no part, is not admissible evidence against her, as tending
to show her acquiescence in the truth of their statements.

ERROR to the Circuit Court of Macon.

Tried before the Hon. E. Pickens.

The indictment against the plaintiffs in error was as fol-
lows, viz:

"THE STATE OF ALABAMA, } In the Circuit Court, at Spring
      Macon county. · }     Term, 1849.

"The grand jurors for the said State, sworn and charged

to inquire for the said county, upon their oaths present, that John R. Lawson, a man, and Mary Swinney, a woman, both late of said county, on the first day of January, 1849, and continually from that day to the finding of this indictment, in the county aforesaid, did live together in fornication, against the peace and dignity of the State," &c.

The defendants demurred to the indictment, and their demurrer being overruled, they pleaded "not guilty, and the statute of limitations of one year." There was a verdict of "guilty" against both of the defendants. On the trial, a witness was introduced by the State, who testified that in 1848, and more than a year before the indictment was found, he had seen said Mary Swinney, in company with her mother, in the night, at the house of said Lawson, who was sick at the time, and who was shown to be an unmarried man, "it being expressly declared by the State that the foregoing evidence was intended to be connected with other evidence to be subsequently introduced." The court allowed the evidence to go to the jury, and each defendant objected separately and specifically to each portion of it, on the ground that each portion related to a time anterior to one year before the indictment was found, and anterior to the first of January, 1849. The court overruled their objections, and each defendant excepted.

The State proved by another witness, that defendant Mary was seen at Lawson's house early in the morning, about sunrise, during the year 1846, and frequently at other times during the year was seen on his premises; that in 1847 said Lawson came to the house of witness, and, on being asked to stay all night, refused, and inquired where Mrs. Swinney (the mother of defendant Mary) and her family were staying. Witness informed him that they were staying in his kitchen, and Lawson immediately went into the kitchen, and remained there all night.

The defendants also objected to each portion of this evidence on the same ground, but their objections were overruled, and they excepted.

The State further proved, by other witnesses, that defendant Mary was frequently seen at the house of Lawson, at one time early in the morning, during the fall of 1849 and in 1850; that she was seen sitting at the head of the table in his

house "dishing out coffee;" and that she frequently staid all night at his house. Each defendant objected to each divisible clause of the evidence thus offered, on the ground that it related to a time subsequent to the finding of the indictment, and was illegal and irrelevant. The court overruled their objections, and the defendants excepted.

The State also introduced one Dr. Mabson as a witness, and offered to prove by him that in the summer of 1850 he was at the house of Mrs. Swinney, when defendant Mary was delivered of a child; that in the room where said Mary was lying, and in her presence, (she being shown to be in a rational state,) and a few minutes after the child was born, a midwife, who was in the room, said something to Mrs. Swinney about her fee, when Mrs. Swinney told her she should be paid. Dr. Mabson then remarked to Mrs. Swinney, "What will I do for my fee?" Mrs. Swinney answered, "that he ought to be paid; that he deserved it; that he must not look to her for his fee, as she did not send for him; that she had sent to Mr. Lawson to send for a doctor." Witness further stated that defendant Mary made no remark on the occasion. The State expressly offered the foregoing testimony only as to defendant Mary, and announced that it was intended to connect it with other evidence to be subsequently offered. Each defendant objected to each portion of this evidence, on the ground last above stated, and defendant Lawson objected to it on the further ground that he was absent at the time. The evidence was admitted, and defendants excepted.

The State further proved by Dr. Mabson, that when the brother of defendant Mary (a small boy living with his mother) came after him, on the occasion above referred to, when said Mary was delivered of a child, he was riding a horse which belonged to defendant Lawson. This evidence also was admitted by the court, against the defendants' objection, and they excepted.

The defendants offered to prove by Dr. Mabson, on his cross examination, that he had afterwards applied to Lawson for his fee for delivering said Mary of the child, and that Lawson refused to pay it, and said that the child was not his. This the court refused to allow, and defendant Lawson excepted.

The State also proved that after the birth of said child. defendant Mary had confessed that it was Lawson's child. This confession was offered only as evidence against defendant Mary, and was so admitted by the court; and each defendant excepted to its admission. The State also proved that, after the birth of the child, the defendants were frequently seen riding together in a buggy; that at the last term of the court, when the case against them was called, they came into court arm in arm, and afterwards left town together in the same buggy. This evidence also each defendant objected to, and their objections being overruled, they excepted.

RICE & MORGAN, for plaintiffs in error.

1. When the only charge in an indictment is, that a man and woman "did live together in fornication," and the State places both the defendants on trial together, any testimony which is not admissible as to one of the defendants, cannot be admitted against the other. The State v. Jolley et al. 3 Dev. & Bat. 110; The State v. Welch, 26 Maine Rep. 30; 3 Chitty's Crim. Law 1141; Rex v. Sudbury et al. 1 Lord Raymond 485; Rex v. Kinnersley et al. 1 Strange 196; Rex v. Scott et al. 3 Burr. Rep. 1264; Palmer v. Severance, 10 Ala. 346. If the female's confessions are admitted as evidence against her, how can the court save the male defendant from the influence of such confessions?

2. Upon such trial of such indictment, the State is bound to prove the guilt of both defendants, and to secure the conviction of both, else no valid judgment can be entered against either. This of itself gives to each defendant such an interest in the acquittal of the other, as to authorize each to make any objection to any evidence affecting the result, which his co-defendant could make. If the testimony be admissible as to one only, it is only half admissible, and must therefore be rejected *in toto*. And although the man only be indicted, yet the same principles apply; because the offence is necessarily joint, and the guilt of two must be proved.

3. Although fornication may be inferred from collateral facts or circumstances satisfactorily proved, yet the only facts and circumstances which are admissible for that purpose must

be such as are "coincident with guilt, and seem naturally to exclude every other hypothesis." The State v. Crowley, 13 Ala. 175; Richardson v. Richardson, 4 Porter 467; Grant v. Cole, 8 Ala. 519; Duncan v. Littell, 2 Bibb 424; McLeod v. Wakley, 3 Car. & P. 311.

4. The talk or conversations of third persons are inadmissible to prove fornication. Belcher v. The State, 8 Humph. Rep. 63; Bradford v. Bush, 10 Ala. 389; Oden v. Stubblefield, 4 ib. 40; Anderson v. Hawkins, 1 Dev. Rep. 445.

5. The conversation between Mrs. Swinney, Dr. Mabson and the midwife was clearly inadmissible, even against defendant Mary. It occurred more than a year after the indictment was found; has no relevancy to the charge contained in the indictment; was not participated in by the defendant Mary; was of such a rude and offensive nature, as not to entitle it to any notice or reply from her, even if her situation at the time had not rendered it highly improbable that she would reply to it. No legitimate inference can be drawn from her "mere silence." Wheat v. Croom 7 Ala. 349; Watson v. Byers, 6 Ala. 393; Mattocks v. Layman, 16 Verm. 118; 2 En. Crown Cases 347; 1 Moody 347; 14 En. Com. Law Rep. 152; 22 ib. 329; 1 Smedes & M. 562; 14 Serg. & R. 388; 12 Met. 235.

6. Although, in such a case as this, the evidence is not necessarily confined within the time specified in the indictment, or within the twelve months before the finding of the indictment, yet proof of anterior acts cannot be admitted, until proof is first made of other acts of a like nature within that period. The State v. Crowley, 13 Ala. 174; Innerarity v. Byrne, 8 Porter 176; Mardis v. Shackleford, 4 Ala. 501. The first evidence offered by the State, and objected to by the defendants, is conceded to be *prima facie* irrelevant, and what acts of a similar nature, occurring "within the limited period," were offered to show its relevancy? This court has decided, that when evidence which is *prima facie* inadmissible is admitted, it is a sufficient cause of reversal; that the court itself must decide correctly as to the admissibility of evidence. Crenshaw v. Davenport, 6 Ala. 390; DeGraffenreid v. Thomas, 17 ib. 602; Abny v. Kingsland, 10 ib. 355.

It cannot be said that the error did no injury, and therefore

it is no ground for reversal. How can this court know that it did no injury? Why let the State make the first impression on the minds of the jury by illegal evidence? A criminal case is not one in which the Appellate Court ought to speculate, as to the probable effect of *any error* committed by the court below.

7. The birth of the child some fifteen months after the indictment was found, was not evidence that defendant Mary had had criminal intercourse with any man at or before the indictment was found; nor was it evidence that she had "lived in fornication" with any man at or before the indictment was found; nor was it evidence that she had "lived in fornication" with defendant Lawson at or before indictment found. The State v. Crowley, 13 Ala. 172; 1 Carr. & P. 22. In actions for slander, or malicious prosecution, or other action where the intention or motive of the party is a material ingredient of the cause of action, it is permissible to show subsequent acts and words, which naturally lead to the conclusion that the defendant had a bad intention or motive at or before the suit was brought. But in actions of trespass, or other action, or an indictment for fornication, where the intention of the defendants is immaterial, and does not form part of the offence, evidence of subsequent acts is never admissible. Newton v. Holford, 47 En. Com. Law Rep. 537. See also Clay's Digest 431, § 3, which shows that on second and third conviction of such offence, it becomes a felony. Where then is the reason or justice of admitting subsequent acts which may be a felony?

Again: if certain acts occurring within the period limited in the indictment had first been proved, and then evidence of subsequent acts had been offered to explain those acts, the defendants would have had the legal right to raise the question for the decision of the court, whether such acts were "of a like nature," or properly explainable by such evidence. Of this clear legal right they were deprived, by the course pursued on the part of the State.

8. The indictment is defective. It is not sufficient to allege that a man and woman "did live together in fornication." Moore v. Commonwealth, 6 Met. 243; Beasley v. The State, 18 Ala. 535; Archbold's Crim. Pl. 38; 1 Bouv. Law

Dic. 85, 585. It does not charge "one complicated offence consisting of several facts, but several offences jumbled together." Rex v. Roberts, 1 Show. Rep. 390. A paper purporting to be the act of "the grand jurors for said State" is not an indictment. An indictment is the act of "the grand jury for the body of" some named county. Clay's Digest 453 § 19; Middleton v. The State, 5 Porter 484.

M. A. BALDWIN, Attorney General, for the State.

I. In every case of this sort, the fact is to be inferred from the circumstances. 2. Greenl. Ev. 31. And acts barred by the statute of limitations, as well as those which take place after the finding of the indictment, may be given in evidence, as explanatory of acts within the time alleged, for which the parties are indicted, as in insanity. 2 Greenl. Ev. 36; State v. Wallace, 9 N. H. 517; Com. v. Merriam, 14 Pick. 518; State v. Crowly, 13 Ala. Rep. 172; Loveden v. Loveden, 2 Hagg. Con. Rep. 463.

II. The proof in this case is the same, whether the issue arises in an indictment, a libel for a divorce, or an action on the case. 2 Greenl. on Ev. 31; Betts v. Betts, 1 Johns. Ch. Rep. 197; Burgess v. Burgess, 2 Hagg. 533; Mortimer v. Mortimer, ib. 543; State v. Morgan, 11 Ala. Rep. 291. And there is no difference in principle, as to proof by confession, in cases of this kind and any other. 2. Green. Ev. 34–35.

1. Nor does it make any difference, in a case *where the guilt of one involves the guilt of the other*. It is competent testimony to go to the jury, to have whatever weight it is entitled to, as against the party making the confession. In cases of conspiracy, judgment may be given *against one conspirator* before the trial of the other. Rex v. Kinnersley, 1 Str. 195. And one may be convicted after the other conspirator is dead. Rex v. Nichols, 2 Str. 1227; Rex v. Scott et al., 3 Burrows 1262. Suppose Mary, the defendant, had been tried alone, her confessions would have been good as against her, but not as to Lawson. Proof *aliunde* of her confessions would be necessary to establish his guilt; and if Lawson had been acquitted, the conviction of Mary Swinney would have been set aside, for it takes two to commit this crime; on the same principle that one cannot be convicted of a conspiracy, or two of a riot.

2. If the *confessions* of one cannot be given in evidence, as against himself, in a case of this kind, how can the *acts* of one be given in evidence, as against him in the same sort of a case? If the defendant, Mary, had been seen going to the house of defendant, Lawson, in the night, or been seen coming from Lawson's house early in the morning, this would have been a circumstance against her, and evidence *tending* to show her guilt. What would be the difference in proving by a witness who saw her going into, or coming out of the house of Lawson, and proving by a witness that she *confessed* that on a certain time she went into, or came out of the house of Lawson.

3. The *particeps criminis* in adultery is a good witness against the party indicted. If so, are not his confessions good against him when jointly indicted? 2 Greenl. Ev. 36; State v. Crowley, 13 Ala., Rep. 172.

4. If a single man and a married woman be indicted for adultery, before conviction for that offence one of the parties must be shown to be married, otherwise (the illicit intercourse being proved) the offence would be only fornication, a lesser grade of crime than adultery. State v. Hinton and Watson, 6 Ala. Rep. The confession of the woman that she was married (the illicit intercourse being proved) may then convict, not only her, but the man, of a higher degree of crime than if they were not proven. Cameron v. State, 14 Ala. Rep. 546.

5. The cases in 3 Dev. & Batt. 112, and 26 Maine Rep. 30, bear no analogy to this. It was not decided in those cases that, *as a general rule, evidence which is not admissible as to one is not admissible as to either, where the guilt of one involves the guilt of the other ;* but simply that husband nor wife cannot be a witness for or against each other, or for or against any other person who is a party to the record, or in interest with such husband and wife, in any matter which arose while the marriage subsisted, upon the ground of the identity of interest which the law creates, and the confidence which it protects between husband and wife, and also on the ground of public policy.

III. Declarations made by a person in presence of, and against the party accused, and not denied by him, are evidence against him. Com. v. Call, 21 Pick. 522.

IV. The party accused is not allowed to give in evidence his own declaration after the crime committed for which he is indicted. State v. Oliver, 17 Ala. Rep. 595, and authority cited.

V. The indictment is good. In an indictment for adultery, it is not necessary to aver that either party is married, for it is a technical offence. State v. Hinton and Watson, 6 Ala. Rep. If not necessary to aver that the parties are married, one or both, in adultery, it is not necessary to aver that both are unmarried, in an indictment for fornication. See also case of State v. Sterne, at this term, for hawking and peddling.

An indictment commencing, "The Grand Jurors for the State of Alabama, upon their oath, present," &c., held good by this court. Morgan v. State, 19 Ala. Rep. 556, and authorities.

GOLDTHWAITE, J.—We think the court below did not err in overruling the demurrer to the indictment. If a single act of fornication was indictable, it might perhaps be necessary to allege the constituents which make up the offence, although even then, upon the reasoning of the case of State v. Hinton, 6 Ala. Rep. 365, it would be sufficient to charge the offence in the terms of this indictment. But entertaining some doubts as to the correctness of the reasoning in the case cited, we prefer to rest our decision on different grounds. The offence contemplated by the statute, Clay's Dig. 431, § 3, was not a single act, but the living together in fornication; and the facts which enter into the composition of this offence are necessarily so complicated, that it is impossible to state them, so that the legal conclusion of guilt will result with certainty and precision, and for this reason it is unnecessary to allege them. A similar rule prevails, and for the same reason, in an indictment for keeping a common bawdy house; in which the statement of the character of the house, in general terms, is sufficient, without alleging the particular constituents which make up a house of that description.—1 Chitty's Cri. Law, 141. So also, an indictment charging the defendant with soliciting a servant to rob his master was held good, without stating the means of solicitation—Rex v. Higgins, 2 East, 4; and in the case of

Rex v. Fuller, 1 B. & P. 180, it was held, that the charge of an endeavor to incite a soldier to mutiny in general terms, although a felony, was sufficient. The same principle was also recognized by this court, in Sterne v. The State, decided at the present term, in which it was held, that where the offence was complicated, consisting of a repetition of acts, or where it was continuous in its character, not implying a single act or any given number of acts, the use of the general term was sufficient.

Neither is there any force in the objection, that the indictment purports on its face to be found by the grand jurors for the State, sworn and charged for Macon county.—Morgan v. The State, 19 Ala. Rep. 556.

The other questions involve the correctness of the admissibility of the evidence set out in the bill of exceptions, every divisible portion of which was objected to. The greater portion of this evidence related to acts occurring more than twelve months before, or at some period subsequent to the finding of the indictment; and assuming for the present that such facts conduced to establish the criminal intercourse of the defendants below, at the time to which they referred, the question is presented with reference to its admissibility in one aspect only, and that is, as to the time within which the evidence of acts of this character is to be confined. We entertain no doubt that in all cases, whether civil or criminal, involving a charge of illicit intercourse within a limited period, that evidence of acts anterior to such period may be adduced, in explanation of acts of a similar character within that period; although such former acts, if treated as an offence, would be barred by the Statute of Limitations.—2 Greenl. Ev. 36. Evidence of this character would not, however, be admissible as independent testimony, and if so offered should be excluded, but should be received when proposed in connection with, or subsequently to the introduction of evidence tending to establish an improper intercourse between the parties during the period to which the charge is confined, or in the present case to the time covered by the indictment.

As to the admissibility of evidence, tending to show the criminal intercourse of the parties at a period subsequent to

the indictment, there is more difficulty, and after a careful examination, we have been unable to find a case in which this point has been directly decided. The proposition, as a general rule, that acts of indecent familiarity may be explained by proof of the subsequent adultery of the parties, we should doubt, and we think we can see valid objections against it; but that subsequent acts of criminal intercourse can, under no circumstances, be received in explanation of such familiarities, is, we think, equally erroneous. When we concede the correctness of the rule, that previous acts may explain subsequent familiarities, it follows, that what is but an inference in the mind of the jury, created by the evidence of improper familiarities, explained by the fact of prior intercourse, may be corroborated by proof of subsequent illicit connection, which then becomes confirmatory or cumulative evidence. It will be observed, that upon the principle on which we have placed evidence of this character, it is *prima facie* irrelevant, and that when offered, its relevancy should be shown by its connection with acts already in evidence, or its proposal with facts subsequently to be established. There is also another principle upon which evidence of this character may be received in cases like the present. The fact to be established by the evidence is, that the parties lived together in a certain condition; and if this particular condition of life was proved to exist, both anterior and subsequent to the time alleged in, or covered by the indictment, an inference might often be correctly drawn as to the existence of this condition during the intermediate period. We would not be understood to say, that this inference would exist in every supposable case in which such proof could be made; in some instances, the two periods, at which the particular condition was proved to exist, might be so far apart as to afford no reasonable inference as to the intermediate time, and in that case the evidence would be inadmissible. In every case also, much would depend upon the character of the condition; but when the intermediate period was not so long as to be inconsistent with the nature of the condition proved, or when such evidence is offered in explanation of other facts already established, indicative of such condition, it is then relevant, and may in many cases be conclusive. Having stated the

conclusions we have attained in relation to acts outside of the period covered by the indictment, in the aspect in which we have considered it, it follows that the objections to its admission, on the ground that it referred to acts occurring more than twelve months before, or at any given period after the indictment was found, cannot be sustained.

It is, however, urged, that the admissions of one of the defendants, if admissible in all other respects, should have been rejected for reasons peculiar to the nature of the offence charged; that on the trial of an offence which cannot, from its constitution, be committed by one person, and where all who are charged with its commission are tried together, that any evidence which tends to establish the guilt of one, and one only, cannot be received. We have examined with some care, the authorities which have been cited in support of this proposition, but do not find that they sustain it. The case of the State v. Jolley & Whitley, 3 Dev. & B. 224, was an indictment of the same character as in this case; and the defendants being tried together, the husband of the female defendant, who had been divorced, was admitted against the objection of the defendants, to give evidence of their adulterous intercourse during the marriage. This evidence was held to be improperly admitted; and Judge Gaston, in delivering the opinion, intimates, that had the male defendant been tried alone, the evidence of the husband as to the same facts, against him would have been inadmissible, (not by reason of the joint nature of the offence, but) because the prohibition of husband and wife to testify against each other applied, not only when the testimony tended to convict, but when it tended to criminate or degrade. The case of The State v. Welch, 26 Maine R. 30, turned upon the same principle, and the husband was held an incompetent witness, simply upon considerations of policy, resting on the marriage relation. To the contrary of the position taken for the plaintiffs in error, we find that in the case of joint offences, where more than one defendant is on trial, it is the well settled practice to admit the confessions of one party against himself—the court cautioning the jury, that they are to operate against such party only, and that the other defendants cannot be convicted, except upon evidence *aliunde*, sufficient to estab-

lish their guilt. It follows, that the objection to the admissions on this ground is untenable.

The admission of the female defendant below, that Lawson was the father of the child of which she was delivered in the summer of 1850, tended to prove illicit intercourse between herself and Lawson at a time subsequent to the finding of the indictment, and was, under the rule we have established, admissible, if offered under circumstances which rendered its relevancy apparent to the court. Conceding, however, that it was not so offered, that its relevancy did not appear at the time it was proposed, yet its relevancy does appear from the facts shown by the record to have been subsequently offered in evidence.

In this aspect of the case the question of practice is raised, as to the effect of admitting evidence *prima facie* irrelevant, which is received against the objection of the opposite party, and without its relevancy being in any way shown to the court at the time it is offered. All the authorities agree, that in such case it is the better course for the court to reject it. Van Buren v. Wills, 19 Wen. 203 ; Weidler v. The Farmers' Bank of Lancaster, 11 S. & R. 324; Rex v. Hursey, 6 C. & P. 81 ; Davis v. Calvert, 5 Gill & John. 269, 304. But it is equally clear, upon the same authorities, that while the court may reject it in the first instance, it is not bound to do so, but may let it in, and repudiate it, if, after all is heard, it is still irrelevant.

It follows, that if it appears affirmatively from the record, that the evidence objected to became relevant by its connection with any other testimony subsequently offered, the court committed no error in its admission, or at least not such a one as the party objecting could avail himself of in an appellate court. We have considered the last question with reference to one portion of the testimony only, but an examination of the record will show, that the same principles are applicable to other portions.

The evidence offered by the defendant Lawson, of his refusal to pay for the professional services of the physician, rendered during the confinement of the other defendant, with his statement that the child was not his, not being connected with any conversation or admission offered by the State,

was properly rejected. To have allowed it would have been permitting the defendant to make evidence for himself.

Another objection urged against a large portion of the testimony is, that it did not tend to establish any of the ingredients entering into the consummation of the offence charged, without regard to time; that it tended neither to establish the living together of the parties, nor their illicit intercourse at any period. Upon this head it may be remarked, that the fact of illicit connection is one which from its nature can very rarely be directly proved, and must in the great majority of cases be inferred from circumstances, the weight and conclusiveness of which vary, according to the situation and character of the parties, the habits of society, and other incidental circumstances. Facts apparently trivial and innocent in themselves, sometimes derive importance from their connection and combination with other facts. That the parties were frequently seen riding together in a buggy would, as an isolated and independent fact, prove nothing; but the criminal intercourse between the parties once established, their continued intimacy, as denoted by acts of this character, might be entitled to much weight, as determining upon the question as to the continuance of such intercourse. The intimate association of a man with a female of known impurity is, of itself, a circumstance of some significance; and in all cases of this character, whether civil or criminal, the legal rule follows the rational interpretation. Green. Ev.

The evidence with which the court has had the most difficulty, in arriving at what it deems a correct conclusion in this view, is, the evidence first offered on the part of the State, showing the presence of the female defendant at the house of Lawson, in the night time, in company with her mother, in the year 1848, and the conversation proved by the witness Mabson, which occurred in the presence of the defendant Swinney, against whom only it was offered. The fact that an unmarried woman is seen in the night time at the house of a single man, who is sick at the time, in company with her mother, it is true, by itself and disconnected from every other fact, proves nothing, and it would be as unjust as uncharitable from that circumstance alone to draw any deduction unfavorable to the virtue of the female. But this evi-

dence was not offered by itself, and as an independent fact; it was proposed to be connected with other testimony subsequently to be offered; and the record informs us that in 1847, circumstances which it is unnecessary here to detail with particularity, were proved, tending to show an act of illicit connection between them at that time in Chambers county: that in 1846 the defendant Swinney was seen alone at Lawson's house, at an early hour in the morning, and that from 1845 to 1851 she was frequently seen going to and from his house, and during the same period they were frequently seen riding in a buggy together. We are of opinion that, in connection with this evidence, the testimony referred to became relevant. If the jury believed that the defendants were criminally intimate in 1847, the fact that the guilty female was seen at the house of her paramour in the night time, although he was sick, and she was accompanied by her mother, is a fact tending to show that their intimacy still continued, and might properly go to the jury, to be estimated by them.

The conversation which was detailed by the witness Mabson we regard as inadmissible. It could only be received as an implied admission against the female defendant, on the ground that by her silence she assented to the correctness of the conclusion, that her co-defendant was the proper person for the physician to look to for the payment of his professional services, for attention during her confinement. The rule laid down by all elementary writers, as the result of the adjudged cases, in relation to evidence of this character, is, that it is to be received with the utmost caution, and never should be received at all, unless the statement is of a character which naturally calls for a reply, and the party to be affected by it is in a situation in which he would probably respond to it. 1 Green. Ev.; Commonwealth v. Kinney, 12 Met. 235. Without considering whether the conversation was such as naturally to call for a response from her, we all concur, that her situation, as disclosed by the evidence, was such at the moment as to render it at least highly improbable that she would make any response. This being the case, under the influence of the rule above laid down, it should not have been received.

In relation to the other portions of the testimony, we are unable to perceive any error in their admission. The attention of the female to the ordinary household duties of Lawson, the open and public intimacy of an unmarried man with a woman, who had given the strongest proof of her want of chastitity by the birth of an illegitimate child, were proper to go to the jury, to show the character of their intercourse, at a time which, although after the finding of the indictment, might, in connection with the other facts establishing their intimacy at an antecedent period, throw some light upon the character of their intercourse during the intermediate time.

For the error, however, in the admission of the evidence of the witness Mabson, the case must be reversed, and the cause remanded.