# Hill *v.* The State.

*Indictment for Living in Adultery.*

1. *Indictment for adultery; admissibility of evidence.*—On a trial under an indictment for adultery, where a witness for the State testifies to facts which would reasonably warrant a conclusion of the defendant's guilt, it is not permissible for the defendant to ask said witness if the son of the woman with whom the defendant is charged to have lived in adultery, did not at a certain time try to kill the defendant; such question calling for the opinion or conclusion of the witness.

2. *Same; same.*—On a trial under an indictment for living in adultery, where the illicit intercourse is shown by the evidence to have occurred within the time covered by the indictment, evi-

[Hill v. The State.]

dence of facts and circumstances tending to show cohabitation between the parties anterior and subsequent to such period of time, is relevant and admissible; and for such purpose, evidence tending to show that the woman named continued to live at the place owned by the defendant and that the defendant furnished her with provisions and groceries, is admissible.

3. *Same; same.*—On a trial under an indictment for living in adultery, where the woman named in the indictment testifies that her name was different from the name alleged in the indictment, it is competent for the State to show by her, that she was known by the name charged in the indictment.

4. *Same; same.*—On a trial under an indictment for living in adultery, it is not competent for the defendant to prove by the witness for the State that he went to the place where he saw the defendant with the woman named in the indictment, for the purpose of raising a row with the defendant, the purpose of the witness going to the place mentioned being wholly immaterial and irrelevant to any issue involved.

5. *Same; same.*—On a trial under an indictment for living in adultery, where there was evidence on the part of the State tending to show that the place where the defendant and the woman named in the indictment lived together belonged to the defendant, and that the defendant had carried the woman to the place and furnished her with provisions while she staid there, it is competent for the defendant to prove by the said woman, during her examination as a witness, that the place where she lived belonged to the father of the defendant who was an old man and a cripple, and that she moved on said place under a contract of hire with the father of the defendant, for the purpose of looking after him and working for him on the place.

APPEAL from the County Court of Morgan.

Tried before the Hon. WILLIAM E. SKEGGS.

The appellant in this case was indicted, tried and convicted for living in a state of adultery or fornication with one Iuka Smith.

There was evidence introduced on the part of the State tending to show that the defendant was guilty of the offense charged.

Jim Thompson was a witness introduced for the State and testified to having seen the defendant and Iuka Smith in bed together. He further testified that he was the son of Lena Hill, the wife of the defendant. On the cross examination of this witness and after he had testified that his mother left the defendant shortly after the

time he stated he saw the defendant in bed with Iuka Smith, he was asked by defendant's counsel the following question: "Is it not a fact that at about the time when you say you saw this woman out there, that your brother Morris Childers came down there and raised a row with Henry and tried to kill him by shooting him with a gun?" The State objected to this question, the court sustained the objection, and the defendant duly excepted.

Edmund Lampkin, a witness for the State, testified that having heard that the wife of Henry Hill was sick, he went out to the place where she was staying one Sunday afternoon and saw the defendant there, and also the woman Iuka Smith. Thereupon the State asked the witness Lampkin the following question: "Where has Iuka Smith been living since the time you saw them at the same place on this Sunday?" The defendant objected to this question upon the ground that it called for irrelevant and immaterial evidence, the court overruled the objecttion, and the defendant duly excepted. The witness answered that she had been living out at the same place, which was said to be owned by the defendant, ever since the time referred to. The defendant moved to exclude this answer and duly excepted to the court overruling his motion.

Against the objection and exception of the defendant the witness was allowed to testify that he had seen the defendant and Iuka Smith pass his house several times since going to the place said to belong to the defendant.

Morris Childers, a witness for the State, testified that he was the son of Lena Hill, the wife of the defendant, and further testified to facts showing the defendant guilty as charged. On the cross examination of this witness the defendant asked him the following question: "On the day when you saw Henry Hill bring this woman Iuka Smith out there, is it not a fact that on that day and at that time, you came there for the purpose of raising a row with Henry and didn't you try to shoot him with a gun?" The State objected to this question, the court sustained the objection, and the defendant duly excepted.

The woman with whom the defendant is charged to

[Hill v. The State.]

have lived in a state of adultery or fornication was introduced as a witness and testified that her name was Iuka Tate and not Iuka Smith; but upon further examination she testified that she had been sometimes called Iuka Smith. This witness testified that she lived on Charlie Hill's place; that Charlie Hill was the father of the defendant. Against the objection and exception of the defendant, the State was permitted to prove by said witness that the defendant sometimes sent groceries out to her and sometimes brought groceries to her. Upon the cross examination of this witness, the defendant sought to prove that she moved out to the place of Charlie Hill under a contract of hire with said Charlie Hill, who was an old man and a cripple, and that her duties were to look after things for him and to take care of him. Upon objection on the part of the State the court refused to permit the defendant to prove these facts by the witness, and to such ruling the defendant separately excepted.

The cause was tried by the court without the intervention of a jury, and upon the hearing of all the evidence the court rendered judgment finding the defendant guilty as charged.

TROUP & GREEN, for appellant.—Our statute does not attempt to punish the act of adultery, but, as has often and uniformly been held by our Supreme Court, the offense punishable under this statute is the living together. Not alone living together, but "to constitute the offense of adultery, the living together must be open and notorious." *Hall v. State*, 53 Ala. 463; *Quartemas v. State,* 48 Ala. 369; *Bodiford v. State*, 86 Ala. 67.

After the State had introduced evidence tending to prove that the woman was living on a place owned by Charlie Hill, the father of defendant, which was also claimed by the defendant, the defendant, on cross examination of the woman, sought to explain her presence there by several questions propounded to her, which proof the court declined and refused to permit appellant to make. This ruling of the court the appellant insists was error and was manifestly prejudicial to him in that he had a right, in as much as her presence there was at-

tempted to be shown by the State as a circumstance against him, to have that presence explained and by this witness, because if in fact a contract of hire did exist she being a party to it was best competent to testify about it, and in addition thereto the appellant was entitled to have everything tending as a circumstance toward his guilt fully explained so that the court might be fully and fairly informed as to the real merit of the circumstances offered against him.—*Yarbrough v. State,* 115 Ala. 92.

MASSEY WILSON, Attorney-General, for the State. The court properly sustained the objection of the solicitor to the question propounded the witness Jim Thompson. That part of the question "and tried to kill him" called for the conclusion of the witness. He should have been asked to state what occurred on the occasion referred to.—*Harrison v. State,* 78 Ala. 5, 11; *White v. State,* 103 Ala. 72, 81; *Bailey v. State,* 107 Ala. 151.

The witness Lampkin testified that defendant claimed to own a place near where (witness) lived, and that witness had seen defendant and the woman Iuka Smith there together. The question propounded the witness, "Where has Iuka Smith been living since the time you saw them at the same place on Sunday," was proper for the purpose of showing that the woman continued to live on defendant's place, and was a circumstance tending to show the continuation of the unlawful relation between defendant and the woman.—*Lawson v. State,* 20 Ala. 65; *Alsabrooks v. State,* 52 Ala. 24; *Morrison v. Morrison,* 95 Ala. 309; *Bodiford v. State,* 86 Ala. 67; *Walker v. State,* 104 Ala. 56; *Wright v. State,* 108 Ala. 60.

The objection of the State to the question propounded the witness Childers was properly sustained. The purpose of the witness on the occasion in question was to be inferred by the jury from the facts testified to by the witness.—*Harrison v. State,* 78 Ala. 5, 11; *White v. State,* 103 Ala. 72, 81; *Bailey v. State,* 107 Ala. 151.

It was proper to ask the witness Iuka Smith whether

or not the people had called her Iuka Smith.—*White v. State*, 72 Ala. 195, 199.

It was proper to ask the same witness who sent her groceries; tending as it did to show the relation between the parties.—See authorities cited under second proposition.

DOWDELL, J.—The defendant was tried and convicted before the county court on an indictment for living together with one Iuka Smith in a state of adultery or fornication. The offense charged, as said in *Bodiford v. State*, 86 Ala. 68, "is a crime of darkness and secrecy, and hence always difficult of direct proof." The fact of illicit intercourse, like any other fact, may become a legitimate inference or conclusion to be drawn from circumstantial evidence. The evidence on the part of the State tended to show such a relation and state of living between the defendant and the woman Iuka Smith, as to reasonably warrant the conclusion of the defendant's guilt. There was no error in sustaining the solicitor's objection to the question propounded to the witness Jim Thompson. That portion of the question as to whether Morris Childers "tried to kill him," Henry, called for an opinion or conclusion of the witness, and for that reason, if no other, was objectionable.—*Harrison v. State*, 78 Ala. 5, 11; *White v. State*, 103 Ala. 72, 81; *Bailey v. State*, 107 Ala. 151.

Whenever an act of illicit intercourse is shown by the evidence within the period of time covered by the indictment, evidence of facts and circumstances which tend to show cohabitation between the parties, anterior and subsequent to such period of time is relevant and admissible.—*Lawson v. State*, 20 Ala. 65; *Alsabrooks v. State*, 52 Ala. 24; *Morrison v. Morrison*, 95 Ala. 309; *Bodiford v. State*, 86 Ala. 67; *Walker v. State*, 104 Ala. 56; *Wright v. State*, 108 Ala. 60. Under this principle the testimony of the witness Lampkin objected to by the defendant was competent and the court committed no error in its admission. So, too, it was competent to show by the witness Iuka that the defendant furnished her with provisions and groceries. This evidence tended to illustrate the relation existing between her and the de-

fendant. This witness having testified that her name was Iuka Tate, it was proper to show by her, that she was also known as Iuka Smith, the name charged in the indictment.

The objection of the State to the question asked the witness Childers, if it was not his purpose in going to the place where he saw the defendant bring the woman Iuka Smith, to raise a row with the defendant, was properly sustained. The purpose of the witness in going to the place mentioned, was wholly immaterial, and could shed no light on the fact in issue.

There was a conflict in the evidence as to whether the place, where it was charged that the parties lived together, belonged to the defendant, or to his father, Charley Hill. The State introduced evidence tending to show that the defendant carried the woman Iuka to the said place and furnished her with provisions while she staid there. The purpose of this evidence was to illustrate and show the character of the relation existing between the parties. The evidence also showed that Charley Hill, defendant's father, who was old and afflicted, lived in the house. The defendant offered to prove by the witness Iuka, "that she moved out there under a contract of hire with Charley Hill, the father of the defendant, who was an old man and a cripple, to look after things and work for him there on the place," but the court on the objection of the State, refused to allow this proof to be made, and to which ruling the defendant duly excepted. This evidence was competent in rebuttal of the theory, upon which the State offered evidence as to the defendant's having carried the woman to the place. If the State's evidence along this line tended to show intimate and improper relations between the parties, illustrative of other criminating facts and circumstances, that offered by the defendant was in rebuttal of such tendency of the State's evidence, and was therefore relevant and competent. The court erred in excluding this evidence, and for this error the judgment will be reversed and the cause remanded.

Reversed and remanded.