[Criminal No. 792.   Filed April 2, 1934.]

[30 Pac. (2d) 1059.]

## J. CARROLL POWER, Appellant, v. STATE, Respondent.

Mr. Ray C. Bennett, for Appellant.

Mr. Arthur T. La Prade, Attorney General, Mr. P. H. Brooks, Assistant Attorney General, and Mr. Glenn Copple, County Attorney, for the State.

LOCKWOOD, J.—J. Carroll Power was convicted of the crime of incest, and has brought the case before us for review.

There are several assignments of error, but only three questions for our consideration, which we shall take up in their order. The first is that the court erred in failing to dismiss the prosecution on the ground that the defendant was not tried within 60 days of the date of the indictment, as provided by section 5204, Revised Code of 1928, which reads as follows:

"§ 5204. *Dismissal for Want of Prosecution.* The court, unless good cause to the contrary is shown, must order the prosecution to be dismissed where a person has been held to answer for a public offense, if an indictment or information is not found within thirty days; or if a defendant, whose trial has not been postponed upon his application, is not brought to trial within sixty days after the finding of the indictment or the filing of the information."

The record shows that the indictment was returned on the 13th day of October, 1932. On the 28th day of November defendant was brought into court for arraignment, and various dilatory motions were heard between that date and the 7th day of December, upon which day a plea of not guilty was entered, and the case was set for trial on December 12th, being the last day within the statutory period. On that date defendant and his attorney filed a motion for change of venue, supported by the number of signatures required by law, and the case was immediately removed to Maricopa county. On December 14th it was assigned for trial to division No. 3 of the superior court of that county, and on the same day

appellant was brought into court and the time for arraignment set for December 22d. On the date last named appellant moved to dismiss the prosecution because he had not been tried within 60 days from the filing of the indictment. The motion was denied, and the case went to trial on January 12th.

Did the court err in failing to dismiss the prosecution because the defendant had not been brought to trial within the 60 days, as set forth in section 5204, *supra?* It appears from the record that the case would have gone to trial within the statutory time had not defendant himself moved for a change of venue to another county. The granting of this motion rendered it impossible to commence the trial within 60 days after the indictment was filed, but it was actually tried within 30 days from the time the motion for change of venue was granted. Where the reason for failure to try a defendant within the time prescribed by statute is caused by the action of the defendant himself, the statute does not apply. *People* v. *Maniatis,* 297 Ill. 72, 130 N. E. 323. And, when the delay is caused by the defendant's own motion for a change of venue, he is responsible therefor. *State* v. *Cox,* 65 Mo. 29; *State* v. *Farrar,* 206 Mo. App. 339, 227 S. W. 1078. We think the record shows good cause for the delay in trial, and the court did not err in refusing to dismiss the indictment upon that ground.

The second question is whether certain evidence was admissible. This requires a brief recital of the evidence in the case. The indictment charges the defendant with having committed the crime of incest on the —— day of March, A. D. 1932. The uncontradicted evidence shows that a child was born to Ina Power, the daughter of defendant, on the 23d of December, 1932, and that on the 12th day of January, 1933, the date of trial, she was past 20 years of age.

This proves conclusively that about the month of March, 1932, and when she was between the ages of 19 and 20, she had sexual intercourse with some man. The evidence also shows that for some 2 or 3 years prior to the birth of the child she had resided with her father and six brothers, the latter ranging in age from 8 to 22, in a three-room house in the Yuma Valley. One of the rooms was occupied by the six boys as a bedroom, another was used as kitchen, living-room and dining-room, and the third was occupied by defendant and his daughter as a bedroom, the former sleeping on a mattress on the floor, which was removed during the daytime, and the latter occupying a bed in the corner of the room. It is also undisputed that during all this period of time Ina Power was in the habit of keeping company with several different young men, going out with them alone at night, in the usual manner of young men and women. If this were all the evidence in the case, it would be utterly insufficient to sustain a conviction, for all it proves is that defendant, in common with an indefinite number of other men, had the opportunity to indulge in sexual relations with Ina Power. If proof of opportunity to commit a crime were alone sufficient to sustain a conviction, no man would be safe. Indeed, the state apparently assumed the attitude that this would not be sufficient, and therefore endeavored to prove a similar previous offense, occurring approximately 2 years before the date of the one charged. It therefore offered testimony that Ina Power had, in the spring of the year 1931, given birth to another child, and that at some time in May, 1930, a neighbor had seen her father in the same bed with her.

It is the general rule that, in prosecutions for illicit intercourse of any class, evidence is admissible of sexual acts between the same parties, prior to the

date of the specific act charged, notwithstanding that such evidence may tend to prove the commission of a separate and independent crime. The rule, and the reason therefor, is discussed thoroughly in the case of *People* v. *Jenness,* 5 Mich. 305. Therein the court said:

"In the case of an indictment against the man for such intercourse, . . . previous familiarities, and the general or habitual submission of the female to his sexual embraces, must in the nature of things, tend to render it much more probable that the like intercourse took place on the occasion charged—the opportunity being shown. And such is the force and ungovernable nature of this passion, and so likely is its indulgence to be continued between the same parties, when once yielded to, that the constitution of the human mind must be entirely changed before any man's judgment can resist the force of such an inference to be drawn from previous acts of intercourse between the same persons. . . . "

To the same effect are many cases, such as *State* v. *Wallace,* 9 N. H. 515; *Lawson* v. *State,* 20 Ala. 65, 56 Am. Dec. 182; *State* v. *Hurd,* 101 Iowa 391, 70 N. W. 613; 16 C. J., p. 602, and notes.

It is urged by counsel for defendant that evidence of this character is only corroborative, and that it is not admissible unless there is independent evidence sufficient to take the case to the jury, of the commission of the crime charged.

It is true that in most of the cases where the question has been raised there was independent evidence of the offense charged sufficient to take the case to the jury, and we have not been able to find any case which decides specifically whether or not evidence of this nature is admissible in direct support of the main charge, or only in corroboration of other evidence. But, when we analyze the reason for admitting such evidence at all, we think the answer

to the question is clear. The offense charged in the present case is one of a class which can be committed only by the consent of both of the parties involved in the act, and the reason for the admission of evidence of the character involved herein in cases of this nature is well set forth in the case of *Thayer* v. *Thayer*, 101 Mass. 111, 100 Am. Dec. 110, as follows:

"The evidence by which the act of adultery is proved is seldom direct. The natural secrecy of the act makes it ordinarily impossible to prove it, except by circumstantial evidence. The circumstances must be such, indeed, as 'to lead the guarded discretion of a reasonable and just man to the conclusion of guilt.' But when adulterous disposition is shown to exist between the parties at the time of the alleged act, then mere opportunity, with comparatively slight circumstances showing guilt, will be sufficient to justify the inference that criminal intercourse has actually taken place. The intent and disposition of the parties towards each other must give character to their relations, and can only be ascertained, as all moral qualities are, from the acts and declarations of the parties. It is true, that the fact to be proved is the existence of a criminal disposition at the time of the act charged; but the indications by which it is proved may extend, and ordinarily do extend, over a period of time both anterior and subsequent to it. The rules which govern human conduct, and which are known to common observation and experience, are to be applied in these cases, as in all other investigations of fact.

"An adulterous disposition existing in two persons towards each other is commonly of gradual development; it must have some duration, and does not suddenly subside. When once shown to exist, a strong inference arises that it has had and will have continuance, the duration and extent of which may be usually measured by the power which it exercises over the conduct of the parties. It is this character of permanency which justified the inference of its existence, at any particular point of time, from facts illustrating the preceding or subsequent relations of

the parties. The rule is, that a condition once proved is presumed to have been produced by causes operating in the usual way, and to have continuance till the contrary be shown.

"The limit, practically, to the evidence under consideration is that it must be sufficiently significant in character, and sufficiently near in point of time, to have a tendency 'to lead the guarded discretion of a reasonable and just man' to a belief in the existence of this important element in the fact to be proved. If too remote or insignificant, it will be rejected, in the discretion of the judge who tries the case. . . . "

Following the reasoning set forth therein, we are of the opinion that, since the purpose for which evidence of this nature is offered and admitted is to show the disposition of the parties toward each other, any acts of undue familiarity which would "lead the guarded discretion of a reasonable and just man to a belief in the existence" of an adulterous or incestuous disposition between the parties involved, which are not too remote or insignificant in their nature, should be admitted in this class of cases, but limited by the court in its instructions to consideration by the jury only for the purpose indicated. Generally speaking, it is for the trial judge to determine whether the testimony comes within this rule, and in the present case, while the evidence is on the borderline, both as to remoteness and significance, we cannot say affirmatively that error was committed in admitting it.

The last question is in regard to the sufficiency of the evidence to sustain the verdict. The affirmative evidence offered by the state is indeed meager. It consisted of the following facts, taking the evidence in the strongest manner in support of the verdict: (a) Ina Power was seen in bed with her father on one occasion about 2½ years before the date alleged in the complaint as the commission of the offense

charged; (b) her father habitually slept on a mattress in the room where she occupied a separate bed; (c) she gave birth to two illegitimate children, one approximately 9 months after the time when she was said to have occupied the bed with her father, and the other nearly 2 years later. These facts, taken together, prove at the most three things: First, that Ina Power did have intercourse with some man or men at least twice; second, her father had the opportunity to commit the crime charged; and, third, at one time, some years before the alleged offense, he indulged in one act of undue familiarity. The state cannot consider as supporting the charge, the impeaching testimony in regard to certain evidence given by one of the state's witnesses before the grand jury, which it is claimed was in conflict with his testimony upon the stand. This, at the most, merely destroys the effect of the evidence given by this witness at the trial, and leaves the case as though he had not testified at all.

As contradicting the testimony on behalf of the state, we have the absolute denial of defendant and his daughter of the charge, or of any undue familiarity; we have a definite and detailed account by the daughter of the acts which led to the birth of her children, and the identity of the fathers of those children, and a large mass of testimony which at least raises a question as to the bias and prejudice of the principal witness against defendant.

We are indeed reluctant to disturb the verdict of the jury on the ground of insufficiency of the evidence, but, after a careful review and consideration of all of it, we are compelled to believe that the evidence which alone is legally admissible in proof of the defendant's guilt is not sufficient to sustain a conviction, and that the jury must have been misled by assuming that their belief in testimony merely

impeaching in its nature, and disbelief in testimony in denial and explanation of the charge, was direct evidence of the guilt of the defendant. For the foregoing reasons, the judgment of the superior court of Maricopa county is reversed, and the case remanded for a new trial.

ROSS, C. J., and McALISTER, J., concur.