19 So.2d 549

**SEAY v. STATE.**

**6 Div. 96.**

Court of Appeals of Alabama.

Aug. 22, 1944.

Rehearing Granted Oct. 31, 1944.

546

J. T. Johnson, of Oneonta, for appellant.

Wm. N. McQueen, Acting Atty. Gen., and Bernard F. Sykes, Asst. Atty. Gen., for the State.

CARR, Judge.

Appellant was charged originally by affidavit in the County Court of Blount County, Alabama, with adultery or fornication. Title 14, Sec. 16, Ala.Code 1940. On appeal to this court from a judgment of conviction and sentence in the circuit court, the submission is on motion of appellee to strike the court reporter's transcription of the evidence and on merits.

The motion takes the point that said transcription of evidence was not approved by the trial judge. This is not required. The motion, therefore, cannot be sustained. Blair et al. v. Greene, Ala.Sup., 18 So.2d 688.

In the affidavit and warrant in the county court appellant's name appeared originally as *Saye*. A plea of misnomer was filed by appellant. It appears from the testimony taken at the trial in the circuit court that at some time during the proceedings in the county court the deputy solicitor changed the name from *Saye* to *Seay* in the original affidavit and warrant.

The appellant filed the following: "Comes now the defendant and moves the court to strike the complaint in this case and for grounds assign the following:

"1st. Because the original complaint charged the defendant as being named Elizabeth *Saye* and that after the filing of the complaint the same was altered by changing her name to Elizabeth *Saye*." (Emphasis ours.)

Unquestionably appellant's attorney inadvertently used the word *Saye* instead of *Seay* in the motion. However that may be, we are controlled by the record. Had the question been properly raised, opportunity could have been given for a reverification of the affidavit before further proceedings in the county court. Dillard v. State, 137 Ala. 106, 34 So. 851; Rogers v. State, 12 Ala.App. 196, 67 So. 781; Campbell v. State, 150 Ala. 70, 43 So. 743.

There is set out in the record the appeal bond from the county court to the circuit court reciting the conviction in the county court for the same offense for which appellant was tried in the circuit court. In the appeal bond the surname of appellant appears as *Seay*. This appeal bond with its recitations conferred jurisdiction on the circuit court. Ex parte State ex rel. Attorney General (McLosky v. State), 210 Ala. 458, 98 So. 708; Varner v. State, 28 Ala.App. 414, 185 So. 907; Pitts v. State, 19 Ala.App. 559, 99 So. 51; Dubose v. State, 20 Ala.App. 193, 101 So. 911; Bolling v. State, 21 Ala.App. 244, 107 So. 40; Streanger v. State, 21 Ala.App. 600, 110 So. 595.

In the circuit court the solicitor's complaint carried the surname, *Seay*. Appellant moved to strike raising the question that the complaint in the county court charged the defendant as being named *Saye* and the deputy solicitor in the county court struck the word *Saye* and inserted in lieu thereof the word *Seay*, without the consent of the defendant. The trial court overruled this motion.

Great latitude is allowed the pronunciation and spelling of proper names, for proper names are often spelled differently but pronounced the same. The correct determination of the oft controversial question of idem sonans may be approached in two ways. If the inquiry arises on demurrers to the plea of misnomer and the names under consideration are pronounced

the same, or substantially so, the court will make judicial ascertainment of this fact and hold, as a matter of law, the names are the same. If, however, this cannot be determined by the similarity of the pronunciation and the aid of intrinsic evidence must be sought, it becomes a question of fact to be submitted to the court or jury upon issue joined to properly submit the matter. 45 C.J. 387–389.

In the case at bar no evidence was introduced to support the plea of misnomer. The burden was on appellant to sustain the plea. For aught appearing the appellant may have been known by both names. In fact, one of the State's witnesses testified that this was true. Sexton v. State, 236 Ala. 20, 180 So. 731; Noble v. State, 139 Ala. 90, 36 So. 19; Reid v. State, 168 Ala. 118, 53 So. 254; Donnelly v. State, 78 Ala. 453; Nettles v. State, 222 Ala. 236, 132 So. 41.

During the progress of the trial in the circuit court numerous objections were interposed by appellant to the introduction of evidence.

On September 11th, 1943, in the late hours of night, armed with a warrant for the arrest of appellant on the charge the basis of this prosecution, the sheriff and his deputies went to the home of Charlie Moore, where, according to the officers' testimony, they found appellant and Charlie Moore alone in a room in Moore's house, both partly undressed. Over the timely objections of appellant the officers were permitted to relate the facts of their findings on this occasion. In allowing this testimony the trial court gave these instructions to the jury: "Gentlemen of the jury, I'm permitting this evidence to go before you, not on the proposition that she would be liable in this case for anything done after Sept. 11th, but on the proposition of shedding whatever light it may on whatever transpired before that time. It is limited to that purpose."

In this ruling the court is sustained by the authorities. Scott v. Scott, 215 Ala. 684, 112 So. 218; Morrison v. Morrison, 95 Ala. 309, 10 So. 648; Lawson v. State, 20 Ala. 65, 56 Am.Dec. 182; Hill v. State, 137 Ala. 66, 34 So. 406; Alsabrooks et al. v. State, 52 Ala. 24.

It is gathered from the testimony that Moore and his former wife (since the prosecution began he has married appellant) lived in a little home, styled by some witness as "the little house in the corner of the road." Over two years prior to the trial, Mrs. Martha Moore, the first wife, left her husband and went to live on a farm. The little home became the rendezvous for frequent meetings of Moore and appellant, according to the theory of the State and which had ample support from the evidence. Mrs. Martha Moore while testifying in rebuttal, having been called by the State, related that before she left her husband, appellant was a frequent visitor in the little home, sometime with and sometime without invitation.

While testifying for appellant and on cross examination, Charlie Moore denied that he ever said anything to Mrs. Martha Moore about moving out of their home. He asserted it was not true that he told her to take her clothes and get out or he would kick her out. He denied also that he ever had any conversation with Mrs. Martha Moore about his conduct with appellant. Over the timely objections of appellant, Mrs. Martha Moore was allowed to negate these related denials of Charlie Moore and to state that each was, in fact, true.

"A wide discretion is vested in the trial court in the admission of evidence in prosecutions for adultery." 2 C.J.S., Adultery, § 20, p. 486.

The inquiry sought was material and therefore admissible to illustrate the relationship between appellant and Moore. The evidence amply justified the conclusion that Moore and appellant had become very intimate and these intimacies were occasioned by frequent visits to the home from which his former wife left. Any effort, by force or persuasion, to send his wife away to avoid her objections and interferences tended strongly to substantiate the contentions of the State. It is true Moore was not jointly tried with appellant, but, in this case, this fact does not weaken the probative value of this evidence, neither does it destroy its relevancy or materiality.

The case of Sims v. State, 1 Ala.App. 240, 55 So. 1027, 1028, is persuasive. In the opinion therein we find: "Proof having been offered tending to show acts of illicit intercourse between the defendant and Rufe Carson, committed in the house in which the defendant, and also Rufe Carson and his wife and his mother, Tempie Carson, lived, it was admissible to prove that the defendant and Rufe Carson cooperated in driving the latter's wife from

the house. This evidence tended to illustrate the relation existing between the defendant and Rufe Carson, and there was no error in its admission. Hill v. State, 137 Ala. 66, 34 So. 406. And in that connection it was not improper to admit proof of abusive language used by the defendant towards the wife of Rufe Carson at that place."

We do not discover merit in objections interposed to any of the evidence in the case.

The cause was carefully and cautiously tried under the judicial direction of the able trial judge. Every right of appellant was attentively safeguarded.

The case is due to be affirmed and it is so ordered.

Affirmed.

### On Rehearing

Admittedly, witness Charlie Moore and his former wife, Martha Moore, separated in April or May 1941. At the time of the separation, Mrs. Moore left the "little house in the corner of the road" and moved to the farm, where she resided until July, 1943. Appellant was tried in the circuit court in December 1943.

On cross examination Charlie Moore was asked if he objected to his wife's moving to the farm. He answered in the negative. He was then asked: "Didn't you tell her to take her clothes and get out, if she didn't you would kick her out, or that in substance?" He denied this also.

Mrs. Martha Moore was called by the State as a witness in rebuttal. In answer to the question, "Say anything about throwing your clothes out?", she stated, "Yes, he said he would throw my clothes out and kick me out with them."

In the original opinion we treated this latter incident as relating to the time and occasion of the separation in 1941 and in rebuttal of the testimony of witness Moore above set out. On the authority of Sims v. State, 1 Ala.App. 240, 55 So. 1027, we held that this testimony was admissible.

By the aid of appellant's brief on application for rehearing and upon a more careful scrutiny of the record, which is somewhat confused in this particular, we find that the statement of Mrs. Moore, above, was not directed to the circumstances of her leaving the place of her original abode —"the little house in the corner of the road"—but rather when she left the farm, about two years later.

Upon a correct interpretation of the record, we are confronted with an entirely different situation from that which formed the basis for our conclusions in the original opinion in disposing of this question and which were in perfect accord with the views of this court as expressed in Sims v. State, supra.

The testimony does not disclose any contention on the part of the State that appellant and Moore ever cohabited the house on the farm. The evidence is silent if in fact appellant ever visited this home. She was not present at the time of the incident in question, when it is claimed her principal witness abused his former wife. It would be mere conjecture or surmise, unsupported by the evidence, to hold that the appellant was in any way connected with this isolated occurrence.

Moore was not on trial and his place in the forum was only that of a witness. It is inescapable that the inquiry relating to the controversy and conversation between witness Moore and witness Martha Moore was res inter alios acta. Whitaker v. State, 106 Ala. 30, 17 So. 456.

The seasonable objections to this question should have been sustained.

If there is an escape from this apparent error, it is by application of Supreme Court Rule 45, Title 7 of Alabama Code, 1940.

We are not unmindful of our duty to give full and complete recognition to the judicial guide expressed in Rule 45. Nevertheless, we are equally mindful of our responsibility to safeguard and protect the rights of parties litigant by a diligent examination of the record to determine if there is probable injury when error is shown. Henderson v. Tennessee Coal, Iron & R. Co., 190 Ala. 126, 67 So. 414.

It follows from a consideration of the nature of this case that appellant was required to lean very heavily on the testimony of her witness, Moore, for acquittal. If the statement of Mrs. Martha Moore contained a true version of what happened at the time in question, the jury was authorized to find the conduct on the part of Moore was reprehensible and inexcusable, and it should award discredit to him because he thus threatened to cruelly mistreat his estranged wife.

It is very likely that the learned trial judge fell into error, as did this court, in assuming the question was related to the

occasion of the original separation. Be this as it may, we are now forced to the conclusion that it was harmful error to admit this evidence.

It follows that the judgment of affirmance must be set aside and in its stead a judgment of reversal be entered. It is so ordered.

Rehearing granted.

Reversed and remanded.