STATE v. EDWIN E. BUTENHOFF.

155 N. W. (2d) 894.

January 26, 1968—No. 40,537.

*C. Paul Jones,* State Public Defender, and *Roberta K. Levy* and *Murray L. Galinson,* Assistant State Public Defenders, for appellant.

*Douglas M. Head,* Attorney General, *Gerard W. Snell,* Acting Solicitor General, *William B. Randall,* County Attorney, and *Thomas M. Quayle* and *Thomas Poch,* Assistant County Attorneys, for respondent.

NELSON, JUSTICE.

Defendant was convicted of the crime of taking indecent liberties with his nephew, Donald J. Butenhoff, age 7, on February 4, 1966, in violation of Minn. St. 617.08, which states in part:

"* * * [E]very person who shall take any indecent liberties with or on the person of any male under the age of 16 years, without regard to whether he * * * shall consent * * * shall be guilty of a felony." [1]

Defendant appeals from the conviction, contending that it cannot be sustained on the uncorroborated testimony of the 7-year-old boy.

Donald, his parents, and his twin sister lived in a two-bedroom apartment. The children shared a bedroom, sleeping in a double bed. Defendant, their uncle, stayed at the apartment from January 30 to February 5, 1966, while looking for employment. He slept in the same bedroom as the children, and the crime charged, if it did occur, occurred during this time.

Aside from the child himself, no witnesses to the occurrence were produced at the trial. Rosella Butenhoff, mother of Donald, was the only other witness called to testify in behalf of the state, and her testi-

---

[1] The legislature in enacting this provision, originally L. 1929, c. 27, undoubtedly had in mind the prevention of homosexual practices that might injure or demoralize young boys.

mony was devoid of any corroborative effect on the question of guilt. On direct examination she testified that defendant had lived at their apartment from January 30 to February 5 and had slept in the same double bed as the children.

When cross-examined Mrs. Butenhoff gave the following testimony:

"Q   * * * What type of garb, or clothing, did Donald, your son, wear during this period of time?

"A   He wore a two-piece pajama.

"Q   Okay. And would Donna wear the same thing, pajamas?

"A   Yes.

"Q   And were they old enough at this time to put on their own pajamas and the like?

"A   M-hm, they dressed themselves.

* * * * *

"Q   * * * During this period of time, would you ever look in to check the children —

"A   Yes.

"Q   —after Ed had gone to bed?

"A   A couple of times I think I have.

* * * * *

"Q   And what did you have, a couple of blankets on that bed?

"A   Two blankets.

"Q   Two blankets. Would Ed be sleeping right with the children or would he be more or less on the bedspread and the like, with there being a layer of blankets or cloth between him and the children?

"A   No, I don't think so.

"Q   Do you understand the question?

"A   Yes.

"Q   You don't know for sure, though; is that correct?

"A   Well, I don't know for sure."

Donald's father was not called as a witness. Neither were John Sorenson and his wife, an uncle and aunt of Donald, although the record indicates that a complaint in the matter was received by the police on February 14, 1966, from Sorenson. Not even Donald's sister, who slept

in the same bed, appeared to have made any complaint and she was not called as a witness. Thus, defendant's conviction rests upon the testimony of the 7-year-old complaining witness.

The boy, when questioned in chambers to determine his competence, stated that he did not know what it meant to tell a lie and that he did not know what it meant to tell the truth. He did say that his mother spanked him when he told a lie. The court finally determined that the child did know the difference between truth and falsehood and permitted him to testify. There were, however, notable inconsistencies in his testimony.

The information stated that the act took place on February 4, but Donald could not remember when it occurred. He testified first it happened "more than one day"; later, he claimed it happened "at night." Donald did state that the last time it happened was a school day and that he went to school the next day also, although the "next day," February 5, was a Saturday, and school was not in session on that day.

Donald testified that he and his sister, Donna, usually went to bed before defendant and his mother. (His father worked until midnight.) Defendant usually was then watching television. Donald, at one point, claimed he was awakened by defendant calling out to him "Don, wake up." At the preliminary hearing, however, Donald, when asked how he was awakened, answered, "I don't know." When specifically asked if defendant called to him, the child stated, "No." Donna, his sister, never awakened.

Donald claimed defendant put his hand "inside" the child's pajamas. On cross-examination, he first claimed that defendant removed the bottoms of his pajamas but then said that they were left on. Donald also admitted that what "probably" happened was that defendant touched him when moving in bed while asleep. He admitted that defendant usually would push him when moving about in his sleep.

Donald testified that his mother and father told him that defendant had said not to say anything. Donald claimed he told no one about the assault. He later changed this to "I don't remember who I told." He insisted, however, that he did not tell his aunt or uncle who made the complaint, nor did he tell the babysitter with whom he stayed on the

afternoons of February 4 and 5, his mother, or anyone at school. Donald stated that he did not like defendant, and he also stated that he liked defendant.

Although defendant's counsel explained to him that even if he did not take the witness stand in his own behalf reference could not be made by the state or the court to his not testifying, he did not hesitate to testify in his own defense. Defendant's stay at the Butenhoff home from January 30 to February 5, 1966, was fully covered, as well as his background, his schooling, and the work in which he had been engaged. He testified that he was not a sound sleeper and frequently moved about while sleeping. He stoutly denied that he had taken any indecent liberties with Donald. He said that when he left the Butenhoff apartment on February 5, he left his new address with them and spoke to them at least twice before his arrest. No mention of any indecent assault was ever made. Defendant was not arrested until April 1, 1966.

While defense counsel went into length in questioning defendant on direct, the cross-examination on the part of the state was limited to eliciting the facts that he had been convicted of car theft and burglary. On redirect defendant testified that he had entered pleas of guilty to these crimes. At the close of that testimony, the court immediately made the following statement to the jury:

"I would like to point out to the jurors at this time—and I'll tell you about it again—that the evidence of these prior convictions is received only for a very limited purpose in this case. The prior convictions have no bearing whatsoever on whether or not this Defendant committed the crime of Indecent Assault with which he is charged. They have no bearing whatsoever on that point.

"The only reason they are admissible in evidence in our state is to give you some assistance in determining the credibility, or truthfulness, of the witness on the witness stand, and that is the only basis that evidence of prior convictions is admitted in evidence, and, of course, that's the reason the Court admitted them in this case."

The court very properly gave the following instruction to the jury:

"You have a right to and you should take into consideration the

actions and appearances of the different witnesses on the witness stand, their age, their discretion, their ability to know the things to which they have testified, their opportunity or lack of opportunity of seeing the things to which they have testified, their ability or lack of ability to remember, their feelings of bias or prejudice if any of those factors have been shown, the interest they may have in the outcome of this lawsuit, their frankness, their sincerity or lack of frankness and sincerity, the motives they have in giving the testimony that they have given on the witness stand, and so forth.

"Ordinarily, a person who has been indecently assaulted will make prompt complaint thereof to someone—an adult to a spouse or a policeman—a child to parents, teacher, or brothers or sisters. Lack of prompt complaint indicates that the indecent assault did not, in fact, occur. Here, no such prompt complaint was made by Donald. The lack thereof should be considered by you in the light of all the evidence in this case, including Donald's age, experience, intelligence, background and surroundings."

The trial court also again referred to the evidence of previous convictions and repeated what it had told the jury on that issue at the close of the testimony. Possibly the court gave too much emphasis to the effect of the evidence showing prior convictions of defendant. There was no evidence of sexual aberrations in his past. The court suggested that the jury could consider previous felony convictions as of some assistance in judging the truthfulness of defendant's testimony. This was followed by the mitigating statement, however, that it was not admitted for the purpose of indicating defendant's guilt in the instant action. Our cases do not appear to have approved such extensive comment on the admission of prior convictions in the charge to the jury. In State v. Skogman, 171 Minn. 515, 516, 213 N. W. 923, the following instruction was given concerning a witness' admission of his previous conviction of crime:

"I believe there was also an admission on the part of one of the defendant's witnesses, namely, Lewis, that he had previously been convicted of crime. That evidence was received merely for the purpose of bearing on his credibility as a witness in this case."

This court held that instruction was clearly right.

Any more extended comment on the purpose of the admitted felony convictions could enhance the prejudice likely to ensue from disclosing past convictions.[2] Dwelling too much on the admissibility of the prior convictions in the instructions could well overemphasize that portion of the testimony to the detriment of one charged with another and a different form of crime.

■■■ After examination of the record we agree with defendant's contention that the evidence was insufficient to justify a guilty verdict. The only evidence of misconduct was Donald's testimony, and that testimony was so contradictory and evasive that whether it is worthy of belief is questionable. There was no corroboration of Donald's story and certainly corroboration in some respect should be a necessary safeguard against the highly suggestible characteristics of a child of his age, especially when the testimony is, as in this case, inherently weak and highly contradictory.

While it is true that Donald was but 7 years old at the time of the trial, and some lapse of memory and understanding might be expected, the inconsistencies in his testimony are so great and so frequent that it is hardly conceivable that a jury could see fit to accept the child's version and bring in a guilty verdict. The testimony of the child was not only contradictory, but it was admitted by Donald that the "assault" may not have been an assault at all. The child agreed that what could have happened and probably did happen was that defendant touched him while moving about in his sleep. Evidence of that nature is not clear and convincing and falls far short of proving defendant's guilt beyond a reasonable doubt in the absence of corroborating evidence to lend necessary credence to Donald's testimony. If mere proof of oppor-

---

[2] See McCormick, Evidence, § 43, wherein he discusses Uniform Rules of Evidence, Rule 21, and the rule followed in England and Pennsylvania, which provides that when the accused takes the stand he is shielded, under certain circumstances, from inquiry or proof as to misconduct or conviction of crime when offered to impeach. See, also, 36 Minn. L. Rev. 735, 37 Minn. L. Rev. 608, and 40 Minn. L. Rev. 319, on admissibility of evidence of prior convictions of a defendant who takes the witness stand.

tunity to commit a crime were alone sufficient to sustain a conviction, no man would be safe. Power v. State, 43 Ariz. 329, 30 P. (2d) 1059.

The inconsistencies in that testimony have been pointed out. Nor did the child make any immediate complaint so far as the record discloses. The assault allegedly occurred February 4 and defendant was not arrested until April 1, 1966. The record does not indicate to whom the child may have confided. Donald testified that he told no one. His mother apparently knew nothing of the affair, although she was present in the house when the assault allegedly occurred. There is no evidence of threats by defendant. Strangely, the child claimed only that his mother and father instructed him to say that defendant told him "not to say anything." On this record we must conclude that the jury was permitted, upon evidence neither clear and convincing nor corroborated, to find defendant guilty in a case involving an accusation easily made, hard to be proved, and still harder to be disproved by the one charged with the offense, no matter how innocent he might be.

Many courts refuse to permit a conviction to stand in a sex offense based on the uncorroborated testimony of a child. In Wilson v. United States, 106 App. D. C. 226, 271 F. (2d) 492, it was held that in a prosecution for taking indecent liberties with an 11-year-old girl, the corpus delicti could not be established by the child's uncorroborated testimony on the witness stand.

In Wilson, the court discussed Kelly v. United States, 90 App. D. C. 125, 194 F. (2d) 150, where the defendant had been convicted of inviting another person to accompany him for lewd and immoral purposes, saying (106 App. D. C. 226, 271 F. [2d] 492):

"* * * The disputed testimony of the complaining witness was the only evidence of such an invitation. Although we did not say that corroboration of the corpus delicti was required, we did say there was 'ample precedent for a ruling by this court that in certain cases the uncorroborated testimony of one witness will not support a conviction', and we reversed the conviction 'for lack of the requisite proof to convict.' We said: 'The case before us lies in a field in which our courts have traditionally been unusually skeptical toward the accusation. This has been true of all the so-called sex offenses.' * * *

"The complaining witness in the Kelly case was a policeman: A woman's uncorroborated tale of a sex offense is not more reliable than a man's. A young child's is far less reliable. 'It is well recognized that children are more highly suggestible than adults. Sexual activity, with the aura of mystery that adults create about it, confuses and fascinates them. Moreover, they have, of course, no real understanding of the serious consequences of the charges they make. As a consequence most courts show an admirable reluctance to accept the unsubstantiated testimony of children in sexual crimes.' Guttmacher and Weihofen, Psychiatry and the Law (1952), p. 374."

The court finally stated (106 App. D. C. 227, 271 F. [2d] 493):

"* * * [I]n Brown v. United States, 80 U. S. App. D. C. 270, 271, 152 F. 2d 138, 139, we said: 'We do not minimize the importance of a young child's spontaneous exclamations. They may be much more valuable than her testimony on the witness stand.' On the other hand, her testimony is subject to the test of cross-examination, and if it meets that test it may be more valuable than her spontaneous exclamations. However that may be, we now hold that the corpus delicti in a case such as this may not be established by the child's uncorroborated testimony on the witness stand. The adequacy of particular kinds and amounts of corroboration must be left for decision in particular cases as they arise."

See, Benton v. United States, 88 App. D. C. 158, 188 F. (2d) 625.

Under the testimony in the instant case, no lewd or immoral conduct by abuse of the child's physical body being shown, the most that could possibly have been spelled out from the circumstances would have been disorderly conduct. Even that offense would not be proved under the evidence in the case at bar. See, State v. Rolfe, 151 Minn. 261, 186 N. W. 574.

In Konvalinka v. United States, 109 App. D. C. 307, 287 F. (2d) 346, the defendant was convicted of assault after trial in the Municipal Court of the District of Columbia. The Municipal Court of Appeals affirmed the conviction. On appeal from that court it was held that the testimony of the complaining witness was sufficiently corroborated not

only by his spontaneous declaration to a police officer immediately after the alleged assault—constituting a measure of corroboration of his own testimony concerning the corpus delicti—but also by the testimony of others tending to confirm his story. The necessity of corroboration of the charge was emphasized by the Municipal Court of Appeals in Konvalinka v. United States, 162 A. (2d) 778, 781:

"* * * [T]he homosexual nature of the assault demands treating with great caution the boy's accusation against appellant and requires of the Government the most convincing kind of proof. * * *

\* \* \* \* \*

"* * * [I]f the Government had only the testimony of the boy to rely on, we would have to reverse the judgment. *The uncorroborated testimony of the complainant would be insufficient.*" (Italics supplied.)

In the case at bar there is no charge or proof that the alleged act of defendant was homosexual in nature or coupled with any lewd or immoral purpose. Under the circumstances nothing but the most convincing kind of proof of lewdness or immorality on the part of defendant could justify a conviction on the present testimony or support the requirement of proof beyond a reasonable doubt. Such proof is clearly not present. See, Yancey v. State, 202 Miss. 662, 32 So. (2d) 151; People v. Oyola, 6 N. Y. (2d) 259, 189 N. Y. S. (2d) 203, 160 N. E. (2d) 494; State v. Witmer, 174 Neb. 449, 118 N. W. (2d) 510. See, also, Children and Young Persons Act, 1933 (23 & 24 Geo. V. c. 12), § 38.—(1), which provides that when the testimony of a child is admitted in evidence for the prosecution in a criminal case the person charged "shall not be liable to be convicted of the offense unless that evidence is corroborated by some other material evidence in support thereof implicating him."

The Minnesota court has heretofore recognized the marked trend in many courts and legislatures to insist upon corroboration in the prosecution of such offenses. State v. Anderson, 272 Minn. 384, 137 N. W. (2d) 783. There we held that in the absence of clear and convincing corroborative evidence to support a conviction for incest, and where we entertained grave doubt as to the defendant's guilt, the interests of

justice required a new trial. We recognize the role psychological factors may play in provoking charges of sexual misconduct. But we do not believe that the need of corroborative evidence exists only when the complainant is a young girl. The need exists equally when the complainant is a child in view of the high degree of suggestibility commonly found in children—and clearly present in this case, where the child changed his testimony depending on when and by whom the questions were asked.

While it is true that the act charged against defendant is an act usually performed in secret, out of the view of corroborating witnesses, this does not mean that some substantial evidence cannot be obtained lending veracity to the complainant's narrative where the charge is true. The requirement of corroborating evidence is necessary since our liberties are based upon the idea that it is better for some of the guilty to go free than for any who are innocent to be convicted. People v. Oyola, *supra.*

Usually in cases of this nature there is immediate complaint by the victim or suspicious actions by the defendant which serve to corroborate the testimony. Neither occurred here, and the result aptly illustrates the dangers of permitting a jury to determine an indecent assault case that is based entirely on the testimony of a young and immature child. We therefore adopt the rule that some corroboration of the testimony of a child in a sex-offense case is generally required to prove the charge.

It may be pointed out that this court, while it has affirmed convictions based solely on uncorroborated testimony, has only done so when that testimony was "clear and convincing." State v. Engstrom, 226 Minn. 301, 32 N. W. (2d) 553 (a paternity proceeding). We have always examined the testimony carefully in cases of this nature, recognizing the danger of convicting on uncorroborated evidence. See, State v. Connelly, 57 Minn. 482, 59 N. W. 479; State v. Trocke, 127 Minn. 485, 149 N. W. 944; State v. Anderson, *supra.* Other jurisdictions, also, insist on corroborating evidence when the complainant's testimony is weak. See, State v. Burton, 355 Mo. 467, 196 S. W. (2d) 621; Rice v. State, 195 Wis. 181, 217 N. W. 697; People v. Garafola, 369 Ill. 232, 16 N. E. (2d) 741; State v. Elsen, 68 Idaho 50, 187 P. (2d) 976. In Ganzel v. State, 185 Wis. 589, 590, 201 N. W. 724, the court stated:

"A sentence of seven years * * * upon this [uncorroborated] evi-

dence must give anxiety \* \* \*. It is true that this court has held many times that a conviction for the crime of rape may be sustained upon the uncorroborated testimony of the witness. It does not follow, however, that a conviction upon such testimony is to be arbitrarily sustained under all circumstances."

In view of the inconsistent and contradictory character of the testimony upon which the state relies in the instant case, that testimony is patently insufficient to prove defendant's guilt beyond a reasonable doubt. The conviction cannot, upon the record herein, stand.

Reversed and defendant discharged.