**STATE of Minnesota, Respondent,**

v.

**James Milus WEAVER, Appellant.**

**No. C8–85–1688.**

Court of Appeals of Minnesota.

May 6, 1986.

Review Denied June 19, 1986.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Alan L. Mitchell, St. Louis Co. Atty., Duluth, for respondent.

C. Paul Jones, Minnesota Public Defender, Mollie G. Raskind, Deputy Public Defender, Minneapolis, for appellant.

Considered and decided by HUSPENI, P.J., and LESLIE and CRIPPEN, JJ.

## OPINION

CRIPPEN, Judge.

Appellant James Weaver was convicted of two counts of criminal sexual conduct in the first degree, one count of criminal sexual conduct in the third degree (a lesser included offense), and one count of fifth degree assault (a lesser included offense). He was also charged with second degree assault, but the charge was later dismissed. Appellant was sentenced to 43 months for one count of criminal sexual conduct in the first degree. Upon Weaver's appeal, we affirm in part and vacate in part.

## FACTS

James Weaver, 39, and Jackie Lilyquist, 30, met in a Duluth tavern in March 1982.

Although both were married, they began seeing each other, and their relationship soon escalated into a sexual affair. Lilyquist testified that the two saw each other "probably a couple times a week" at first and later, at least once a day. For more than two years, they met as often as circumstances would allow and had sexual relations in their cars, at a parking ramp, in parking lots, at their homes when their spouses were gone, and in various motels.

In September 1984, Lilyquist also began having sexual relations with Ken Bergman, 19, a co-worker. Weaver found out about Lilyquist's relationship with Bergman and became angry. He testified at trial that he attempted to terminate the relationship at that point, but that Lilyquist did not want to end the relationship. They continued to see each other, and Lilyquist continued to see Bergman without appellant's knowledge.

Lilyquist testified that it was she, not appellant, who wanted to end the relationship. She said that appellant wanted to leave his wife and wanted Lilyquist to leave her husband, a move Lilyquist indicated she was not prepared to make. She said she wanted to end the relationship to be free of appellant's possessiveness.

Some time before noon on November 12, 1984, Ken Bergman and Lilyquist engaged in sexual intercourse in Lilyquist's home. While they were dressing, Lilyquist's husband came home unexpectedly and caught the two in the bedroom. Bergman left as quickly as he could, and Lilyquist's husband told her that he would divorce her and that he would win custody of the children. Later, Lilyquist notified appellant that she would not make it to a lunch the two had planned.

Shortly after 7 p.m., appellant called Lilyquist. He testified that she wanted to meet him to talk. He told her that he had to get home, but finally agreed to meet her when Lilyquist persisted. Lilyquist testified that it was appellant who insisted upon seeing her, saying that he had something to give her.

The two met in a parking ramp. Lilyquist was accompanied by her three year old son, who began to cry when Lilyquist left the house and insisted that he be taken with her. According to Lilyquist's testimony, she got into appellant's car, leaving her son in her car, and asked, "What is it you wanted to give me?" She testified that appellant began to complain that Lilyquist had brought her son along. After discussing Lilyquist's son, Lilyquist testified that she repeated her question, at which point appellant got out of the car, moved to the back seat, reached under the seat, and pulled out a knife. He grabbed Lilyquist by the neck and put the knife to her throat. Lilyquist testified that appellant hit her in the face and pushed her head into the door, exclaiming that he was tired of her lies and her games. He struck her several more times, Lilyquist said, threatened to kill her, and cut her thumb superficially with the knife to "show how sharp it was." Appellant raped Lilyquist vaginally, using the knife to quell her resistance. He then raped Lilyquist anally, once again threatening her with the knife. Lilyquist testified that after it was over, appellant embraced her and told her how much he loved her. He then let her go.

Appellant claims that the two had consensual intercourse at the parking ramp that night. He testified that after Lilyquist got into his car, they talked about the incident between Lilyquist and her husband, and Lilyquist begged appellant not to leave her. Appellant said she began undoing his pants and that they then had intercourse. Afterwards, they embraced and professed their love for each other. Appellant knew that Lilyquist and Bergman had been together earlier in the day, and he asked Lilyquist about it. He testified to the next events as follows:

I asked her then, I said, "Listen, after everything that we've been through and after every time that I found that you lied to me," I said, "can you be honest with me this time? Can you tell me did you have sex with him today?" Her answer to that was no, I wouldn't be his lover. I went berserk. Here I was be-

lieving this bullshit again and she was pulling the same garbage as she pulled every other time. I lost my temper and I swung my hand back, hit her across the front of her mouth with the back of my hand and come right back down and I hit her again in the jaw. She fell over against the back side of the car and her head thumped against the side of the car and she put her hands up and I was cussing at her and calling her every name in the book, liar, whore, everything I could think of. How can you sit there and tell me how much you care about me and the next time, you want to be somebody else's lover. She said, "No, no, you don't understand. You don't understand. I wanted to be his lover but I couldn't because I cared about you too much." I started crying. I grabbed her and hugged her and she was crying. She cried on my shoulder. I told her I was sorry. Here I was believing it again. I said I was sorry that I had hit her and I said I don't understand any of this. I said I don't understand how I feel. What should we do—not see each other anymore? All we end up doing is hurting each other.

After Lilyquist left Weaver, she went to her sister's house where the police were called. She then went to the hospital to receive medical treatment. Appellant was arrested and charged with criminal sexual conduct in the first degree, stemming from the incident with Lilyquist, and second degree assault, stemming from an incident between appellant and the arresting officers. During an omnibus hearing, the trial court granted appellant's motion to sever the charges for separate trials. The next day, the prosecutor filed an amended complaint, charging appellant with three counts of criminal sexual conduct in the first degree. The first count alleged criminal sexual conduct while putting the victim in fear of great bodily harm. *See* Minn.Stat. § 609.342(c) (1984). The second alleged criminal sexual conduct while armed with a dangerous weapon. *See id.* § 609.342(d). The third count alleged criminal sexual conduct accompanied by force and personal injury. *See id.* § 609.342(e)(i). These three charges all stemmed from the single incident involving Lilyquist. The jury found appellant guilty on two of the charges, but he was sentenced only under one of the charges. The jury also convicted appellant of criminal sexual conduct in the third degree and assault in the fifth degree, both of which are lesser included offenses of criminal sexual conduct in the first degree. The charge of assaulting an officer was dropped.

## ISSUES

1. Was the evidence sufficient to convict appellant of criminal sexual conduct in the first degree?

2. Was appellant properly convicted of two counts of criminal sexual conduct in the first degree and the lesser included offenses?

3. Did the trial court's jury instructions deny appellant a fair trial?

## ANALYSIS

1. Sufficiency of Evidence

Although appellant admits to striking Lilyquist, he claims the assault occurred after he and Lilyquist had consensual sexual relations, not as coercion for rape as Lilyquist claims. Thus, he argues, he did not commit criminal sexual conduct.

Our standard of review when considering a criminal sufficiency of the evidence question is whether the jury, giving due regard to the presumption of innocence and to the State's burden of proving the appellant's guilt beyond a reasonable doubt, could reasonably have found the appellant guilty. *State v. Turnipseed,* 297 N.W.2d 308, 313 (Minn.1980). We must take the view of the evidence most favorable to the State and must assume that the jury believed the State's witnesses and disbelieved any contradictory evidence. *Id.*

Appellant argues that although corroboration of a rape victim's claim is not required for a conviction, the absence of corroboration may mean that the State's case

could not have been proved beyond a reasonable doubt. *See State v. Ani,* 257 N.W.2d 699, 700 (Minn.1977). Appellant asserts that Lilyquist lied to police and medical personnel and that she made up the story of the rape so as not to endanger her anticipated battle for custody of her children. This evidence, appellant claims, casts a reasonable doubt upon the guilt of appellant. *See State v. Butenhoff,* 279 Minn. 177, 188, 155 N.W.2d 894, 900 (1968) (inconsistent and contradictory testimony that is uncorroborated is by itself insufficient to prove guilt beyond a reasonable doubt). The State argues that the evidence was sufficient here, even without more corroboration, because of evidence that semen was found on Lilyquist's clothing and on her person, that blood and semen was found on appellant's shirttail, and that Lilyquist's thumb was cut, allegedly by appellant.

■ Corroboration of a victim's accusation is not required for a rape conviction. Minn.Stat. § 609.347, subd. 1 (1984); *see State v. Hesse,* 281 N.W.2d 491, 492 (Minn. 1979). Corroboration is not required because of the safeguards provided to an accused by a jury trial and by the trial court's power to grant relief where there is insufficient evidence to convict. *Ani,* 257 N.W.2d at 700. Therefore, any perceived lack of corroboration in this case does not render appellant's conviction defective.

■ In addition, there is considerable corroboration of an abusive sexual assault in this case. It is undisputed that appellant had previously become angry about Lilyquist's affair with Bergman. He once was so angry that he smashed Bergman's headlights, followed Bergman home, and then called Bergman's residence, telling Bergman's father that if Bergman did not stop seeing the wrong people, "he won't be a nice little boy any more." Furthermore, Lilyquist reported the assault immediately, and there was conclusive evidence of sexual penetration and of assault.

Appellant argues that Lilyquist's testimony should not be believed because of the couple's history of consensual sexual relations, her propensity for telling lies to appellant and to others, her alleged history of vindictiveness, and the inconsistent statements Lilyquist made to police and medical personnel. Furthermore, appellant argues, Lilyquist had motives for making up a rape story: she was concerned about losing the custody of her children in her husband's threatened divorce suit and she may have sought vengeance against appellant because of the beating he gave her. Since Lilyquist's testimony was inconsistent, appellant argues, his conviction was improper. *See Butenhoff,* 279 Minn. at 188, 155 N.W.2d at 900.

Appellant's reliance on *Butenhoff* is misplaced. Unlike *Butenhoff,* where a child victim provided inconsistent testimony, the jury in this case could reasonably have found in Lilyquist's testimony a cohesive and believable statement, especially in light of the extensive and vigorous cross-examination to which Lilyquist was subjected. Her testimony, and other evidence introduced in the case, was sufficient so that the jury could reasonably convict appellant of criminal sexual conduct.

2. Multiple Convictions Stemming from One Act

Although appellant was originally charged with only one count of criminal sexual conduct in the first degree, the State later filed an amended complaint charging appellant with three counts of criminal sexual conduct in the first degree. The three counts each stemmed from the same conduct, although each count fell under a different statutory definition of criminal sexual conduct in the first degree. Appellant claims that the State's "creative charging" procedure was improper.

■ It is not improper for a defendant to be charged with numerous offenses stemming from one act. *See, e.g., State v. LaTourelle,* 343 N.W.2d 277, 284 (Minn. 1984). That is not to say, however, that the defendant may properly be convicted of more than one of the charged offenses. *See State v. O'Brien,* 364 N.W.2d 901, 905 (Minn.Ct.App.1985) (*aff'd on this issue,* 369

N.W.2d 525, 526 (Minn.1985)). An accused "cannot be convicted twice for the same offense against the same victim on the basis of the same act." *Id.* (quoting *State v. Goodridge,* 352 N.W.2d 384, 389 (Minn. 1984)). Thus, we must vacate one of the two convictions for first degree criminal sexual conduct. *See id.*

■ Convictions for any lesser included offenses must also be vacated. *See State v. Alexander,* 290 N.W.2d 745, 749 (Minn. 1980) (when accused is convicted of an offense and a lesser included offense, the conviction for the lesser included offense must be vacated); Minn.Stat. § 609.04 (1984) (accused may be convicted of the crime charged or an included offense but not both). We therefore vacate appellant's convictions for third degree criminal sexual conduct and fifth degree assault.

3. Jury Instructions

■ Following the parties' final arguments, the trial court gave the following jury instructions:

I am also going to instruct you about two other offenses which the state did not specifically charge, but the law does provide that upon the prosecution of a person for a crime, if he's not guilty of that crime he may, nonetheless, be guilty of a lesser crime, so I am going to instruct you in this case about third degree criminal sexual conduct, which is a lesser included offense and also fifth degree assault, and I simply say to you that as to those particular charges, the presumption of and requirement of proof beyond a reasonable doubt apply also to those other charges. It applies to all charges, whether they are the charges brought by the state or the other ones that I am going to instruct you about, and if you find beyond a reasonable doubt that Mr. Weaver has committed a crime but you have reasonable doubt which crime he's committed, then he is guilty of the lesser crime only.

Appellant claims these jury instructions were prejudicial and deprived him of a fair trial because they confused the jury and

suggested that the reasonable doubt standard did not apply to the lesser included offense. The trial court, however, gave jury instructions that are consistent with the jury instruction guidelines for lesser included offenses. *See* 10 Minnesota Practice CRIMJIG 3.20 (2d ed.1977). CRIMJIG 3.20 states, in pertinent part:

If you find beyond a reasonable doubt that defendant has committed a crime but you have reasonable doubt which crime he has committed he is guilty of the lesser crime only.

*Id.*

Appellant claims more vigorously that another instruction to the jury was confusing and prejudicial. The trial court said:

Now, with regard to those various forms that reflect a guilty finding, if that is your conclusion you may use one or more of those. You are not confined to one and I am not suggesting that you should use any of them. I am simply saying that you are confined to return a guilty form, guilty result, on only one of the charges.

Appellant argues the instruction was confusing because the trial court first said it was permissible for the jury to use one or more of the forms and then suggested that the jury had to return a guilty result on "only one of the charges." "The jury could have been led to understand," appellant argues, "that the Court was of the opinion that the accused was guilty of some offense, thus, resulting in prejudice and the denial of a fair and impartial trial."

■ When reviewing jury instructions, a reviewing court must "assume that the jurors were intelligent and practical people * * *." *State v. Edwards,* 269 Minn. 343, 350, 130 N.W.2d 623, 627 (1964). The court's instructions in this case were neither so confusing nor so prejudicial that they would mislead intelligent and practical people. It is evident that the trial court attempted to discourage the notion that some form of guilty verdict had to be returned. We conclude that any error that may have been committed by the trial court

in stating the instructions did not deprive appellant of a fair trial.

### DECISION

The evidence was sufficient for the jury to reasonably conclude that appellant committed the charged crimes. However, an accused cannot be convicted twice for the same offense against the same victim, nor can an accused be convicted of a crime and lesser included offenses; we therefore vacate one conviction of first degree criminal sexual conduct in the first degree and both lesser included offense convictions. The jury instructions in this case were not so prejudicial as to deprive appellant of a fair trial.

Affirmed in part and vacated in part.