**STATE of Minnesota, Respondent,**

v.

**Larry Roosevelt NOBLE, Appellant.**

**No. CX–02–1990.**

Court of Appeals of Minnesota.

Oct. 21, 2003.

■■■■■■

Mike Hatch, Attorney General, St. Paul, MN; and Amy J. Klobuchar, Hennepin County Attorney, Donna J. Wolfson, Assistant County Attorney, Minneapolis, MN, for respondent.

John M. Stuart, State Public Defender, Theodora K. Gaitas, Assistant State Public Defender, Minneapolis, MN, for appellant.

Considered and decided by WILLIS, Presiding Judge; TOUSSAINT, Chief Judge; and STONEBURNER, Judge.

## OPINION

TOUSSAINT, Chief Judge.

On appeal from his conviction and sentence for felon in possession of a firearm, attempted second-degree murder, and attempted second-degree murder of an unborn child, appellant argues that the trial court erred in refusing to instruct the jury that in order to find him guilty of attempted second-degree murder of an unborn child, appellant must have specifically intended to kill the unborn child. Appellant also contends that because the unborn child was not directly harmed by the gunshot, transferred intent does not apply here. Finally, appellant argues that the court abused its discretion in imposing consecutive sentences for the two attempted-murder convictions because the resulting 28–year sentence exaggerated the criminality of appellant's conduct in firing a single shot that did not directly harm the nonviable unborn child. Because the district court did not abuse its discretion in instructing the jury and in imposing consecutive sentences, we affirm.

## FACTS

Appellant Larry Roosevelt Noble and A.W. were romantically involved, and had two children together. At the same time, Noble was likewise involved with another woman, K.L. Noble's relationship with K.L. was a source of tension in his relationship with A.W. Noble was aware that A.W. was pregnant with his child. On March 27, 2002, Noble was at A.W.'s residence in North Minneapolis. They had an argument regarding Noble's relationship with K.L., and A.W. told Noble to remove his clothes from her apartment. Noble went outside toward A.W.'s vehicle, which he had been driving.

There is some dispute as to what happened next. A.W. testified that she followed Noble to get her wallet out of the vehicle and to finish the conversation about their relationship. She said that Noble became increasingly agitated, told her "I'm going to kill you, b—ch," and moved toward a bag where he kept two handguns. Fearful that Noble was going to shoot her, A.W. gathered her belongings and got out of the vehicle. She ran a few steps before she was shot in the back and collapsed in the snow.

Noble denies shooting A.W. in the back. He contends that she got into the back seat of the vehicle, was holding a gun that belonged to her, and told him that she was going to kill him. Noble argues that he struggled with her for the gun, heard the gun go off, saw A.W. get out of the vehicle, and drove away without realizing that A.W. had been shot.

A.W. was taken to the hospital, where she told doctors that she was just over one month pregnant with Noble's child. The unborn child was apparently unharmed by the gunshot, but A.W. required surgery to repair her internal injuries. A.W. was advised that the anesthesia used during surgery could cause a miscarriage or birth

defects. A.W. elected to proceed with the surgery. A.W. recovered from her injuries, but after considering the risks posed to the unborn child, she elected to terminate the pregnancy about one month after she was shot.

Noble was charged with attempted second-degree murder in violation of Minn. Stat. §§ 609.19, subd. 1(1), .17 (2000) and as a felon in possession of a pistol in violation of Minn.Stat. § 624.713, subd. 1(b) (2000). The complaint was later amended to add an additional count of attempted second-degree murder of an unborn child in violation of Minn.Stat. §§ 609.2662(1), .17 (2000).

At trial, a jury convicted Noble of all charges. The trial court sentenced Noble to 60 months for the offense of felon in possession of a pistol and then imposed consecutive sentences of 183 and 153 months for the attempted-murder offenses, ordering that the 60–month sentence run concurrently with the attempted-murder sentences. Noble challenges the trial court's jury instruction for second-degree murder of an unborn child and the court's imposition of consecutive sentences.

## ISSUES

1. Did the trial court abuse its discretion by refusing to modify the standard jury instruction regarding attempted second-degree murder of an unborn child?

2. Where one attempted second-degree murder victim was a nonviable unborn child, did the sentencing court abuse its discretion in imposing permissive consecutive sentences?

## ANALYSIS

### I.

A trial court has broad discretion in determining the propriety of a specific jury instruction. *State v. Daniels*, 361 N.W.2d 819, 831 (Minn.1985). That determination will not be reversed absent an abuse of discretion. *State v. Blasus*, 445 N.W.2d 535, 542 (Minn.1989). When reviewing a jury charge, an appellate court must view the instructions in their entirety "to determine whether they fairly and adequately explained the law of the case." *State v. Flores*, 418 N.W.2d 150, 155 (Minn.1988) (citation omitted). In doing so, a "reviewing court must assume that the jurors were intelligent and practical people." *State v. Weaver*, 386 N.W.2d 413, 418 (Minn.App.1986) (citation omitted), *review denied* (Minn. June 19, 1986).

■ The trial court instructed the jury on the elements of attempted second-degree intentional murder of an unborn child, in part, as follows:

> The statutes of Minnesota define the crime of murder of an unborn child in the second degree as follows: Whoever, with intent to cause the death of an unborn child *or another*, but without premeditation, causes the death of an unborn child is guilty of a crime.
>
> The elements of an attempt to commit murder of an unborn child in the second degree are: First, the defendant acted with intent to effect the death of the unborn child *or another person*.

(Emphasis added). These instructions were drawn from 10 Minnesota Practice, CRIMJIG 11.33 & 11.34 (1999), which in turn are based on the language of Minn. Stat. § 609.2662(1) (2000).

At trial, Noble objected to the use of the phrases "or another" and "or another person," claiming that the doctrine of transferred intent does not apply in the context of attempts. On appeal, Noble argues that the doctrine of transferred intent does not apply if the unintended "victim" does not suffer harm as a result of the defendant's

conduct. The state agrees that in a typical case of attempted second-degree intentional murder a defendant could not be convicted unless the unintended "victim" did, in fact, suffer some harm. The state argues, however, that the trial court's instruction was not an abuse of discretion because a mother and her unborn child cannot be distinguished the way that intended and unintended victims can be distinguished in an ordinary case of transferred intent.

An attempt requires that the actor have specific intent to perform acts and attain a result which if accomplished would constitute the crime alleged. *See State v. Zupetz,* 322 N.W.2d 730, 735 (Minn.1982); *State v. Schmitz,* 559 N.W.2d 701, 704 (Minn.App.1997), *review denied* (Minn. Apr. 15, 1997). At trial, the prosecutor argued that Noble's alleged intent to kill A.W. could be transferred to her unborn child; however, the prosecutor also argued that Noble had an independent intent to terminate the life of the fetus, and indeed had a motive to do so.

It is questionable whether the doctrine of transferred intent applies to attempted murder. Although the homicide statutes themselves incorporate the doctrine of transferred intent, an attempt requires a specific intent to commit a particular crime, and a substantial step toward its completion. *See generally* Minn.Stat. § 609.17, subd. 1 (defining "attempt"); *State v. Sutherlin,* 396 N.W.2d 238, 240 (Minn.1986) (noting that language in homicide statute requiring intent to effect death of the person "or another" incorporates the doctrine of transferred intent). But we need not decide that issue because a fetus is not a typical "unintended victim," and because Noble's conviction does not rest on an application of the doctrine of transferred intent.

The jury could have concluded that Nobles did not intend to terminate the life of A.W.'s unborn child. Nevertheless, the jury may infer that a person intends the natural and probable consequences of his actions. *State v. Cooper,* 561 N.W.2d 175, 179 (Minn.1997). A natural and probable consequence of the death of A.W. would have been the death of her one-month-old fetus. Thus, even if Nobles had not fired the bullet into A.W.'s lower back, the jury could have inferred that he intended the death of the fetus as a natural and probable consequence of the death of A.W. That finding would not have involved an application of the doctrine of transferred intent.

The jury could also have found, based on the path of the bullet, that Noble did have a specific intent to cause the death of A.W.'s unborn child. The court's instructions, which allowed the jury to convict if it found an intent to cause the death of either the unborn child *or* another, did not require the jury to rely on the doctrine of transferred intent. And the prosecutor explicitly argued that Noble could have had an intent to kill the unborn child, and even had a motive to do so. Defense counsel conceded that the jury's verdict could be based on a finding that Nobles intended to kill A.W., or her unborn child, or both. Thus, the trial court's instruction *allowing* the jury to apply the doctrine of transferred intent, was not necessarily prejudicial.

An error in instructing the jury is harmless if it can be said beyond a reasonable doubt that it had no significant impact on the verdict. *State v. Kuhnau,* 622 N.W.2d 552 (Minn.2001). Assuming the trial court's instruction that allowed the jury to apply transferred intent was error, we conclude that it was harmless.

In reviewing a court's instructions to the jury, this court must assume the jurors are "intelligent and practical people." *Weaver,*

386 N.W.2d at 418. The jury here had ample evidence from which to conclude that Nobles specifically intended the death of the unborn child, either as a natural and probable consequence of the death of A.W., or as a result of being struck by the bullet. In order to find prejudice from the transferred-intent instruction, we would have to assume the jury instead chose to apply the abstract doctrine of transferred intent. If the case had been argued at trial as a case of transferred intent, that assumption might be reasonable. But, as noted above, neither party relied on the doctrine in arguing the case to the jury. And the jury was faced with compelling facts—a bullet striking the lower back of a woman pregnant with a one-month-old fetus that probably could not have survived her death—making it unnecessary for it to address the legal abstraction of transferred intent. A practical juror would have focused on the direct risk of death posed for the unborn child, not on the transfer of intent from one victim to another victim then living in the first victim's body. Therefore, we conclude beyond a reasonable doubt that any error in instructing the jury on the element of intent had no significant impact on the verdict.

## II.

■ Noble also appeals the sentencing court's imposition of consecutive sentences for the attempted murder charges. A sentencing court is in the best position to evaluate an offender's conduct and to weigh sentencing options. *Hough,* 585 N.W.2d at 397. Consecutive sentences are permissive for multiple current felony convictions for crimes against persons. Minn. Sent. Guidelines II.F.2. When reviewing such a sentence, an appellate court will not disturb the sentencing court's decision unless the sentence "unfairly exaggerates the criminality of the defendant's conduct." *Hough,* 585 N.W.2d at 397 (citation omit-

ted). An appellant bears the burden of showing any unfair exaggeration. *Id.* at 398.

The sentencing court here imposed a presumptive 183–month sentence for the attempted second-degree murder of A.W. and a permissive consecutive 153–month sentence, which was also the presumptive duration, for the attempted second-degree murder of A.W.'s unborn child. With the concurrent 60–month sentence for felon in possession of a handgun, Noble's aggregate sentence was 336 months.

Noble concedes that when sentencing multiple felony convictions for crimes against multiple victims, consecutive sentencing is permissive and may be imposed without departure. *See* Minn. Sentencing Guidelines II.F & cmt. II.F.04; *see also* Minn.Stat. § 609.2691 (2002) ("Notwithstanding section 609.04, a prosecution for or conviction under sections 609.2661 to 609.268 is not a bar to conviction of or punishment for any other crime committed by the defendant as part of the same conduct."). Because the consecutive sentence here was permissive, the sentencing court was not required to state aggravating factors or grounds for its decision. Minn. Sent. Guidelines II.F & cmt. II.F.04.

In making its decision, the court examined the imposition of consecutive sentences in *State v. Yang,* 533 N.W.2d 81, 87 (Minn.App.1995) (holding that consecutive sentences did not exaggerate appellant's criminality), *review denied* (Minn. Aug. 30, 1995). In *Yang,* the court considered (1) defendant's knowledge of victim's pregnancy; (2) defendant's close relationship to the victims, as the woman's lover and unborn child's father; (3) defendant's intrusion into victim's home; (4) viability of the unborn child; (5) vulnerability of the victims; (6) manner of the offense; and (7)

defendant's failure to seek help for victims. *Id.*

Although it was not required to state the basis for its decision, the sentencing court here cited several of the *Yang* factors when it imposed the consecutive sentence. It found that (1) Noble knew that A.W. was pregnant; (2) he shot her outside her home; (3) A.W. and the child were particularly vulnerable victims, given the disparity in size between her and Noble; and (4) Noble left A.W. to die on the boulevard.

Noble argues that because the unborn child was not viable, the consecutive sentences exaggerate the criminality of his conduct. *See Merrill,* 450 N.W.2d at 320 ("medical science generally considers a fetus viable at 28 weeks following conception"). Minnesota does not consider the viability of unborn victims as an element under the criminal statute. Minn.Stat. §§ 609.266–.268 (2000); *Merrill,* 450 N.W.2d at 322 (noting that the statute does not distinguish between viable and nonviable unborn children). The statute defines an "unborn child" as "the unborn offspring of a human being conceived, but not yet born." Minn.Stat. § 609.266(a) (2000). Because all unborn children are treated equally under the statute, a sentencing court is not required to consider viability in sentencing. The sentencing guidelines evidence this fact by providing the same severity level for the murder of an unborn child as for other murders. *Yang,* 533 N.W.2d at 87; Minn. Sent. Guidelines IV & V. A state has an important and legitimate interest in protecting pregnant women, and it "has still *another* important and legitimate interest in protecting the potentiality of human life." *Roe v. Wade,* 410 U.S. 113, 162, 93 S.Ct. 705, 731, 35 L.Ed.2d 147 (1973) (emphasis in original). An argument regarding a sentencing court's consideration of the viability of an unborn child is one better addressed to the legislature. *Cf. Merrill,* 450 N.W.2d at 324 (holding that arguments about criminality of causing death of nonviable unborn children "must be addressed to the legislature"). Consequently, we decline to accept appellant's invitation to consider the "maturity" of unborn children where the statute makes no such distinction.

Noble finally argues that the trial court exaggerated the criminality of his conduct because the record contains no evidence that his bullet harmed the unborn child. But the natural and probable consequences of the bullet—A.W.'s surgery and accompanying anesthesia—resulted in serious risk of harm to the unborn child. Further, an unborn child need not be harmed for an actor to be convicted of attempted murder. *See, e.g., State v. Gisege,* 561 N.W.2d 152, 156 (Minn.1997) (holding that attempted second-degree murder does not require proof of bodily harm). Consequently, the sentencing court did not abuse its discretion or exaggerate the criminality of Noble's conduct when it imposed permissive consecutive sentences.

### DECISION

The district court acted within its broad discretion in instructing the jury that intent to effect the death of another person would satisfy the mental state requirement. In addition, the sentencing court did not abuse its discretion by declining to consider the lack of direct harm to, or the non-viability of, the unborn child when it imposed consecutive sentences.

**Affirmed.**