*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1850**

State of Minnesota,
Respondent,

vs.

Rebecca Brynetta Passon,
Appellant.

**Filed September 2, 2014
Affirmed
Reyes, Judge**

Wright County District Court
File No. 86CR121613

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Thomas N. Kelly, Wright County Attorney, Shane E. Simonds, Assistant County Attorney, Buffalo, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Andrea Barts, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Reyes, Presiding Judge; Hooten, Judge; and

Willis, Judge.*

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**REYES**, Judge

Appellant argues that (1) the evidence was insufficient to sustain her conviction of fourth-degree assault of a peace officer because the officer did not suffer bodily harm and the state failed to prove that appellant possessed the specific intent necessary to commit attempted assault-harm and (2) the evidence was insufficient for the jury to find her guilty of gross-misdemeanor and misdemeanor obstructing legal process. We affirm.

## FACTS

During the early morning hours of November 5, 2011, Wright County Deputies Joseph Adams and Glenn Gerads received a call from dispatch to respond to a domestic disturbance at a residence. When the deputies arrived at the house, they were hailed by two men standing outside. The men, who lived at the house, insisted that the deputies enter the house immediately because the person inside was "crazy," there were children inside, and they did not know what the person inside was going to do.

The deputies followed one of the men into the house, where they were approached by appellant Rebecca Passon, who began shouting at the deputies that she did not want the man inside. The deputies asked the man to wait outside and proceeded into the kitchen. Passon, who was belligerent, loud, and visibly intoxicated, slurred her speech, had the odor of alcohol, and used the wall for balance as she walked. She "slou[c]hed down real quickly" into a chair along the kitchen wall, but continued to yell at the deputies, holding a cell phone close to Deputy Adams's face and telling him that she was recording. Given Passon's hostile demeanor and conduct, Deputy Adams was concerned

2

that the cell phone would be thrown at him, and he asked Passon to either put the cell phone away or place it into his outstretched hand so that she might calm down and address his questions. As he extended his arm, Passon grabbed his fingers and began to twist them backward. Adams felt like his "fingers were going the wrong way," which surprised him, and he placed Passon in a wrist lock, instructing her to let go of his fingers. Passon stood up and began to push Deputy Adams back with her other hand.

The deputies advised Passon that she was under arrest, but Passon physically resisted, fighting the deputies' efforts to place her in handcuffs and yelling at them. Once the deputies managed to place Passon in handcuffs, Deputy Adams tried to escort her outside. But Passon continued to be uncooperative and tried to headbutt Adams or hit him with her shoulder. Deputy Adams instructed Passon to stop trying to strike him with her shoulder or head, to which she responded, "I will keep myself protected! Right now!" When the deputy tried to proceed to his squad car, Passon refused to move and would not comply with his instructions, forcing Adams to carry her to the car.

Passon was charged with fourth-degree assault of a peace officer, in violation of Minn. Stat. § 609.2231, subd. 1 (2010), and gross-misdemeanor and misdemeanor obstructing legal process in violation of Minn. Stat. § 609.50, subds. 1(2), 2(2) (2010). After a jury trial, Passon was found guilty on all three counts. The district court formally adjudicated her conviction of fourth-degree assault and sentenced Passon to 365 days in

jail with 320 days stayed, a $3,000 fine, and probation for two years.[1] This appeal

follows.

### D E C I S I O N

### I.     Standard of review

In considering the sufficiency of evidence, our review "is limited to a painstaking

analysis of the record to determine whether the evidence, when viewed in the light most

favorable to the conviction, was sufficient to permit jurors to reach the verdict which they

did." *State v. Webb*, 440 N.W.2d 426, 430 (Minn. 1989). "We will not disturb the

verdict if the jury, acting with due regard for the presumption of innocence and for the

necessity of overcoming it by proof beyond a reasonable doubt, could reasonably

conclude" that the appellant was guilty of the charged offense. *Bernhardt v. State*, 684

N.W.2d 465, 476-77 (Minn. 2004). Convictions based on circumstantial evidence

receive greater scrutiny. *State v. Jones*, 516 N.W.2d 545, 549 (Minn. 1994). In such

cases, the "[c]ircumstantial evidence must form a complete chain that, in view of the

evidence as a whole, leads so directly to the guilt of the defendant as to exclude beyond a

reasonable doubt any reasonable inference other than guilt." *State v. Al-Naseer*, 788

---

[1] Although found guilty, Passon was not formally adjudicated for either gross-misdemeanor or misdemeanor obstructing legal process. *See* Minn. Stat. § 609.035, subd. 1 (2010) (providing that "if a person's conduct constitutes more than one offense . . . , the person may be punished for only one of the offenses"); *State v. French*, 400 N.W.2d 111, 114 (Minn. App. 1987) (providing that when a "defendant is convicted on more than one charge for the same act," the district court shall "adjudicate formally and impose sentence on one count only" and that "[i]f the adjudicated conviction is later vacated for a reason not relevant to the remaining unadjudicated conviction(s), one of the remaining unadjudicated convictions can then be formally adjudicated and sentence imposed, with credit, of course, given for time already served on the vacated sentence." (quotation omitted)), *review denied* (Minn. Mar. 25, 1987).

4

N.W.2d 469, 473 (Minn. 2010) (quotation omitted). This standard applies to the intent element where intent is proved by circumstantial evidence. *Id.* at 474.

## II.    Assault

Passon argues that the evidence was insufficient to sustain her conviction of fourth-degree assault of a peace officer because Deputy Adams did not suffer bodily harm and because the state failed to prove that Passon possessed the specific intent to commit attempted assault-harm. We decline the parties' invitation to decide whether attempted assault-harm is a general- or specific-intent crime because the district court's instructions to the jury included assault-fear, and the evidence was sufficient to prove that Passon had the specific intent to cause fear with her physical acts.

Passon was convicted of fourth-degree assault under Minn. Stat. § 609.2231, subd. 1, which makes it a crime to physically assault a peace officer "when that officer is effecting a lawful arrest or executing any other duty imposed by law." Minnesota's definition of "assault" criminalizes three acts, which the statute divides into two categories. Minn. Stat. § 609.02, subd. 10 (2010); *State v. Fleck*, 810 N.W.2d 303, 308 (Minn. 2012). The first category criminalizes assault-fear: "an act done *with intent to cause fear* in another of immediate bodily harm or death." Minn. Stat. § 609.02, subd. 10(1) (emphasis added); *Fleck*, 810 N.W.2d at 309 (holding that assault-fear is a specific-intent crime). The second category criminalizes both assault-harm and attempted assault-harm: "the *intentional* infliction of or attempt to inflict bodily harm upon another." Minn. Stat. § 609.02, subd. 10(2) (emphasis added); *Fleck*, 810 N.W.2d at 309 (holding that assault-harm is a general-intent crime). *But see* Minn. Stat. § 609.02, subd. 9(3)

5

(2010) ("'Intentionally' means that the actor *either* has a purpose to do the thing or cause the result specified or believes that the act performed by the actor, if successful, will cause that result." (emphasis added)).

On appeal, Passon contends, and the state concedes, that Deputy Adams did not suffer bodily harm or even pain.[2] The parties therefore argue that the assault-harm in this case involves an "attempt to inflict bodily harm upon another" under the second part of the assault-harm statute. Minn. Stat. § 609.02, subd. 10(2). Passon argues that attempted assault-harm is a specific-intent crime, which requires proof that she engaged in an intentional act and that she intended to cause Deputy Adams bodily harm. *See* Minn. Stat. § 609.17, subd. 1 (2010) ("Whoever, *with intent to* commit a crime, does an act which is a substantial step toward, and more than preparation for, the commission of the crime is guilty of an attempt to commit that crime" (emphasis added)); *State v. Zupetz*, 322 N.W.2d 730, 735 (Minn. 1982) (providing that an attempt requires that the actor have the specific intent to perform acts and attain a result which, if accomplished, would constitute the crime alleged). The state argues that *Fleck* controls.

In *Fleck*, the supreme court decided that assault-harm is a general-intent crime, requiring proof only that a person intended "to do the physical act" that results in bodily harm, but does not require proof that the person "meant to violate the law or cause a particular result." *Id.* The *Fleck* court declined, however, to opine on whether an attempt to inflict bodily harm is a general- or specific-intent crime "because the facts of Fleck's

_____

[2] "'Bodily harm' means physical pain or injury, illness, or any impairment of physical condition." Minn. Stat. § 609.02, subd. 7 (2010).

6

case involve[d] the actual infliction of bodily harm." *Id.* at 312 n.5. Here, the parties argue that this case requires a resolution of *Fleck*'s unaddressed issue.

The state argues that extending *Fleck*'s holding establishes that "[t]he nature of the [attempted] assault-harm crime turns on the perpetrator's act itself" and "does not turn on whether the perpetrator actually inflicted bodily harm." To illustrate this principle, the state posits the following examples, which underscore the dilemma presented by *Fleck*'s conclusion that assault-harm is a general-intent crime:

In the first scenario, a perpetrator takes a swing at a victim's head. The victim tries to dodge the punch but fails, and the perpetrator's blow connects, causing a cut to the victim's face. Under *Fleck* the outcome is unequivocal: the perpetrator's act was volitional, meaning he formed the requisite general intent to commit assault-harm. *Id.* at 309. In the second scenario, however, the victim dodges the punch successfully; the blow either misses the victim completely or only brushes the victim, causing no pain, injury, or bodily harm. As the state points out, extending *Fleck*'s reasoning, "[t]he victim's good fortune" has no bearing on the requisite level of intent that the perpetrator must form to commit his act. But adopting this reasoning would effectively impose strict liability for any volitional act regardless of whether that act results in bodily harm.

Moreover, extending *Fleck*'s reasoning to hold that attempted assault-harm is a general-intent crime would contravene what has been axiomatic in our criminal law – that an attempted crime requires the specific intent to commit the underlying offense. *See* Minn. Stat. § 609.17, subd. 1 ("Whoever, *with intent to* commit a crime, does an act which is a substantial step toward, and more than preparation for, the commission of the

crime is guilty of an attempt to commit that crime" (emphasis added)); *State v. Noble*, 669 N.W.2d 915, 919 (Minn. App. 2003) ("An attempt requires that the actor have specific intent to perform acts and attain a result that if accomplished would constitute the crime alleged."), *review denied* (Minn. Dec. 23, 2003); 1 Wayne R. LaFave, *Substantive Criminal Law* § 5.2(e) (2d ed. 2003) ("[C]riminal attempts require proof of an intent to bring about the consequences set forth in the crime attempted, and this is so even though no such intent is required for the completed crime.").

This case highlights the difficulties posed by the criminal code's imprecise mens rea definitions such that Minnesota courts must revert to the common law's increasingly unworkable general- and specific-intent distinctions. *See* Theodora Gaïtas & Emily Polachek, *State v. Fleck: The Intentional Infliction of General Intent Upon Minnesota's Assault Statutes*, 39 Wm. Mitchell L. Rev. 1480, 1505-10 (2013) (proposing that Minnesota adopt the Model Penal Code's mental-state definitions of purpose, knowledge, recklessness, and negligence for assault crimes); Ted Sampsell-Jones, *Mens Rea in Minnesota and the Model Penal Code*, 39 Wm. Mitchell L. Rev. 1457, 1477 (2013) (recommending that Minnesota integrate the Model Penal Code into its statutory framework so that the appropriate mens rea is specified for each element of an offense, not simply the offense as a whole). These difficulties are within the legislature's purview to address.

Here, the parties argue that we must either (1) attenuate *Fleck*'s reasoning that assault-harm is a general-intent crime by holding that attempted assault-harm is a specific-intent crime or (2) apply *Fleck* to impose, in effect, strict liability for any

8

volitional act, regardless of whether that act results in bodily harm, by holding that attempted assault-harm is a general-intent crime. But because the district court's instructions to the jury included assault-fear, we affirm Passon's conviction because the evidence was sufficient to prove that Passon had the requisite specific intent to cause assault-fear with her physical acts.[3] *Fleck*, 810 N.W.2d at 309 (stating that assault-fear is a specific-intent crime).

The district court instructed the jury on the crime of assault, which included assault-harm, attempted assault-harm, and assault-fear: "[a]n assault is the intentional infliction of bodily harm upon another or an intentional attempt[4] to inflict bodily harm upon another *or an act done with intent to cause fear of immediate bodily harm* or death in another." (Emphasis added.) Even accepting that, by grabbing and bending back Deputy Adams's fingers, Passon did not cause bodily harm, including pain, Adams testified that Passon's actions surprised him and caused him to instruct her to stop grabbing his hand and place her in a wrist lock. Passon also tried to headbutt Adams

---

[3] This approach also comports with the language of Minn. Stat. § 609.2231, subd. 1, which criminalizes the acts of one who "physically assaults a peace officer" regardless of whether the assault inflicts "demonstrable bodily harm," suggesting that the type of assault may be assault-fear, assault-harm, or attempted assault-harm so long as the perpetrator's conduct is physical in nature. *But cf.* Minn. Stat. § 609.2231, subd. 2 (2010) (criminalizing assault of firefighters and emergency medical personnel only if the assault inflicts demonstrable bodily harm).

[4] We note that the phrase "intentional attempt" is antithetical. *Compare Fleck*, 810 N.W.2d at 308 ("When a statute simply prohibits a person from intentionally engaging in the prohibited conduct, the crime is considered a general-intent crime"), *with* Minn. Stat. § 609.17, subd. 1 ("Whoever, with intent to commit a crime, does an act which is a substantial step toward, and more than preparation for, the commission of the crime is guilty of an attempt to commit that crime); *Fleck*, 810 N.W.2d at 308 ("The phrase 'with intent to' is commonly used by the Legislature to express a specific-intent requirement.").

while she was in handcuffs, and he had "no doubt" that Passon was trying to strike him. And the squad-car video reveals that after Deputy Adams instructed Passon to stop trying to strike him with her shoulder or head, she responded, "I will keep myself protected! Right now!" The only reasonable inference to be drawn from the evidence is that Passon's physical contact with Deputy Adams was volitional and was done with the specific intent to cause him, at a minimum, fear of immediate bodily harm. And Passon's physical acts did, in fact, cause Adams fear of immediate bodily harm, surprising him and invoking his oral and physical response. The jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude that the Passon was guilty of fourth-degree assault of a peace officer.

### III.    Obstructing legal process

Passon also argues that the evidence was insufficient for the jury to find her guilty of gross-misdemeanor and misdemeanor obstructing legal process under Minn. Stat. § 609.50, subd. 1(2), which provides, in relevant part, that anyone who intentionally "obstructs, resists, or interferes with a peace officer while the officer is engaged in the performance of official duties" is guilty of obstructing legal process.

But because the district court did not record judgments of conviction or impose sentences for gross-misdemeanor and misdemeanor obstructing legal process, we do not address this issue on appeal. *See State v. Hoelzel*, 639 N.W.2d 605, 609 (Minn. 2002) (holding that verdict of guilt, without recorded judgment of conviction, is not final, appealable adjudication); *State v. Ashland*, 287 N.W.2d 649, 650 (Minn. 1979) (declining

10

to address sufficiency-of-evidence argument for counts on which defendant was found guilty but not sentenced or formally adjudicated guilty).

**Affirmed.**